Louise G. Oswald, by Charles C. Trelease, her next friend, complainant-appellant,

*v.*

F. Arnault Seidler, defendant-respondent.

[Argued February 11th and 13th, 1946.   Decided May 20th, 1946.]

Mr. *Charles C. Trelease,* for the appellant.

*Messrs. Bilder, Bilder & Kaufman (Mr. Samuel Kaufman* and *Mr. Bernard Hellring,* of counsel), for the respondent F. Arnault Seidler.

*Messrs. Ruback & Albach (Mr. John E. Toolan,* of counsel), for the respondent Meyer E. Ruback, trustee.

The opinion of the court was delivered by

HEHER, J.

Complainant appeals from a final decree in Chancery entered on the reversal of a prior decree dismissing her bill of complaint (*135 N. J. Eq. 490; 136 N. J. Eq. 443*), in so far as it denies to her the remedies of restitution and accounting by the respondent Seidler, and also from an order discharging an order to show cause which, in effect, constituted a denial of complainant's petition for a turn-over and accounting by the respondent Ruback, who, during the pendency of this suit, came into possession of the subject-matter of the litigation by virtue of his appointment by the Chancellor as trustee of complainant's "assets and property covered by the trust indenture" executed by her.

The indenture was sustained in Chancery. The learned Vice-Chancellor determined that the donor was mentally competent at the time of the execution and delivery of the deed. *135 N. J. Eq. 490.* This court concluded that the evidence demonstrated mental incompetence at that time, and also that

the deed was made without the benefit of adequate independent advice. *136 N. J. Eq. 443.* The *remittitur* reversed the decree and directed Chancery to "enter a decree declaring invalid and setting aside the deed of trust * * *, with such further relief as may be appropriate;" and the record was remanded for further proceedings thereon, according to law and the practice of that court.

While the instant suit was pending in Chancery (the bill was filed on August 24th, 1942), the respondent Seidler (on December 7th, 1942) interposed an independent bill of complaint alleging the execution of the indenture of trust, a copy of which was annexed thereto, and his desire to renounce the trusteeship and to "submit the trust to" Chancery, and praying that Chancery "may take over the administration of the trust and appoint a trustee to administer it under" its supervision, and that his account as trustee, submitted therewith, be approved and confirmed. Immediately upon the filing of the bill, the Vice-Chancellor appointed Ruback "as trustee of the assets and property of Louise G. Oswald covered by the trust indenture made and executed on August 15th, 1941;" and he also appointed Milton Schoenholtz as her guardian *ad litem* in that proceeding. The order directed that Mrs. Oswald, by her guardian *ad litem* thereby appointed, and Charles C. Trelease, her next friend theretofore designated, show cause why the appointment of Ruback as trustee should not be ratified and confirmed. The account thus submitted was referred to a master for audit. Complainant was then confined in a hospital for mental diseases. Neither she nor her next friend entered an appearance in this proceeding. The guardian *ad litem* did so, but he interposed no objection to the confirmation of Ruback's appointment as trustee. After the service of the rule to show cause, Trelease moved that he be discharged as a party defendant, and the motion was granted. Thereupon complainant, by her next friend, presented a petition in the instant suit praying that all proceedings in the second suit be stayed until the final determination of this suit, and that a receiver be appointed to conserve complainant's property meanwhile. The application was resisted by Seidler, and was denied. Ruback's appointment as trustee

was confirmed by an order entered on December 15th, 1942. It was therein provided that "the administration of the trust described in the bill of complaint be * * * taken over under the supervision of the court." And Seidler was thereby directed to transfer and convey to Ruback title to all the assets and property comprising the subject-matter of the trust deed. The instant suit will be referred to as Suit No. 1; and the suit in which Ruback was appointed trustee as Suit No. 2.

The Vice-Chancellor seems to have entertained the view that a decree vacating the indenture of trust would constitute full compliance with the mandate of this court, and that he would not be justified in directing a turn-over of the property to complainant until there was proof of her mental competence. He found "nothing in the *remittitur* which deals with a transfer of assets from the defendant to complainant," and "nothing * * * which provides for an accounting by the defendant to the complainant." Moreover, he was of the opinion that no such order could be directed to Seidler, for he had already turned over the assets in their entirety to Ruback, his successor as trustee, and his final account had been approved in Suit No. 2. In a word, the Vice-Chancellor concluded that, if the *remittitur* be read as directing the "transfer of assets by the defendant or accounting by the defendant," it would require a "repetition of acts which had already been done and would have ignored entirely the fact that the court had already taken over the administration and supervision of the assets" of complainant.

We do not concur in the Vice-Chancellor's interpretation of the *remittitur*. The nullification of the indenture of trust calls for all the relief to which complainant would have been entitled had Chancery so decreed in the first instance, and the principal part of this relief is the reconveyance of all the subject property to complainant, with a full accounting.

It does not matter that there was no evidence before the Vice-Chancellor that complainant had "regained her mental competency;" and the Vice-Chancellor fell into error in holding that, until evidence is laid before him demonstrating that complainant "is competent to receive, hold and manage these assets, they should not be turned over to her," and that the

trusteeship should continue meanwhile. There is no intimation from either counsel that complainant's mental competency is now seriously in doubt. Indeed, the presently acting trustee suggests the Vice-Chancellor's "hesitancy" in this regard "may be due to an over-abundance of caution." It is said that her mental aberration, of a degree necessitating her confinement for a considerable period of time, was due to the death of her husband under unusually distressing circumstances, and that she has now been restored to sanity. On October 8th, 1943, she was discharged by the hospital "as recovered." But however all this may be, the Court of Chancery is under a peremptory duty to execute the *remittitur* of this court precisely as it is written, and that calls for a restoration of the subject-matter of the litigation to complainant. This is the obligation of the lower court even though the *remittitur* be erroneous on its face. The remedy for such rests exclusively in the appellate tribunal. *Wemple* v. *B. F. Goodrich Co., 127 N. J. Eq. 333; Kurth* v. *Maier, 134 N. J. Eq. 511.* If complainant is still mentally incompetent, appropriate measures will be required to safeguard her property, but doubt on this score is not a reason for denying restitution and retaining the assets in the hands of the trustee, whose function was limited to the execution of the trust which was purported to be created by the deed adjudged to be invalid for want of mental capacity in the donor. The title to the property should be revested in complainant, and if she is incompetent, there is an available remedy.

Such was the nature of the equitable power exercised in Suit No. 2. The bill therein was predicated upon the validity of the indenture of trust. It was filed by Seidler "as trustee" for complainant. Complainant asserts that Ruback was a mere successor to Seidler in the execution of the trust created by the indenture, while Seidler and Ruback maintain that the appointment was made in the exercise of general equitable jurisdiction to protect the assets of an incompetent. This suit did not proceed to final hearing, and the basis for the action now asserted by respondents to have been taken was not established by a decree. The proceeding was of a summary nature. We are clear that what the Vice-Chancellor

did was to appoint a successor trustee to execute the trust declared in the indenture. It was not a *pendente lite* appointment to conserve assets. Indeed, complainant's application for the appointment of a receiver *pendente lite* in Suit No. 1 was denied. And Seidler's and Ruback's accountings in Suit No. 2 were rendered as trustees charged with the execution of the trust created by the deed. Thus it is that, the deed of trust having been declared invalid, it was incumbent upon the Chancellor, in the execution of the *remittitur*, to direct a restitution to complainant of the subject-matter of the indenture.

A receivership in Suit No. 1 would have been adequate to deal with the exigencies of the situation. Indeed, the acting trustee so concedes. He says this is, in effect, what was done, although not in Suit No. 1, and that neither the "label" nor the "mechanics" matter; it is "the substance that counts." He also likens his office to that of an administrator *pendente lite* pending proceedings to determine the validity of a will. But the course thus taken savors of a stratagem to achieve an advantage not justly to be had by normal procedure; and devices so motivated are obnoxious to equity. The control of the court over the property of a lunatic is "ordinarily exercised by means of a committee; but instead of a committee, and especially where no person will act as a committee, the court may appoint a receiver." *Pom. Eq. Jur. (5th ed.),* § *1332.*

Such being the case, it is incumbent upon Seidler and Ruback to render a full accounting to complainant. These accountings should be had in the instant suit. The accountings in Suit No. 2 are not binding upon complainant. If that were not so, she would suffer substantial loss, for in these accountings provision was made for compensation and a counsel fee to Seidler, as well as the cost of printing the record in this suit, in which complainant eventually prevailed, and like expenditures, none of which are fairly chargeable to complainant or her estate. This was all on the assumption of a proper administration of a legally effective trust. Obviously, different principles apply to an accounting by Seidler after the invalidation of the trust indenture on the ground of the

mental incompetency of the donor. For example, apart from the foregoing, Seidler's account in Suit No. 2 reveals payments of commissions to real estate brokers for negotiating contracts of sale which were not consummated because the trustee was enjoined by Chancery from selling any of the assets. We need not determine the propriety of these allowances; it suffices to say that this is a proper subject of inquiry now that the trust indenture has been voided, notwithstanding the decree in Suit No. 2.

There is a distinction of substance between an accounting by a fiduciary lawfully in possession of trust property and an accounting by one whose possession is wrongful. . The latter holds in trust for the rightful owner, but the trust arises only for the benefit of the owner and not the illegal holder. The case of *Noxon Chemical Products Co.* v. *Leckie, 39 Fed. Rep. (2d) 318,* is in point. There, also, it was pointed out that the acceptance of the doctrine here propounded by respondents would wrongfully place the burden of compensation, counsel fees and administrative costs upon the one illegally deprived of his property. When the nature and scope of Suit No. 2 are considered, there is no basis either in law or in reason for holding complainant concluded by the accountings there rendered.

This is not to say that the currently acting trustee is not, in the circumstances, entitled to compensation for his services as such. A receiver would have been necessary in any event; and thus the expense of conserving the property pending the litigation would have been unavoidable. Complainant argues that this expense is all chargeable to Seidler. Perhaps so, eventually; but in the first instance it would come out of the estate, and the estate then would have recourse to Seidler for reimbursement if it be decreed that the burden should ultimately rest upon him. *Greenbaum* v. *Lafayette and Broad Realty Corp., 97 N. J. Eq. 536.* We do not determine this question.

And there is no force to the contention that complainant's acceptance of "benefits" under Ruback's trusteeship, and laches, estop her from challenging the decrees approving the accountings of Ruback and Seidler. Appropriate reservations

were made; and she was, after all, but the recipient of a portion of her own property under a claim of right—"benefits" she was entitled to whether the indenture of trust was eventually declared valid or invalid.

In Suit No. 2, a guardian *ad litem* for complainant was appointed without previous notice to her of the intended application therefor; and it is urged by respondent that the consequent failure of jurisdiction of the person (*In re Martin, 86 N. J. Eq. 265*) is not fatal since that was a proceeding *in rem*, and it was therefore unnecessary to join complainant as a party.

This has no real pertinency to the essential issues raised here. The argument does not take into account the basis of complainant's point, *i. e.*, that Ruback was appointed to execute an express trust whose validity was at issue in Suit No. 1, and that it is sought to conclude her by the accountings rendered in Suit No. 2 before the invalidity of the trust was established by the decree in Suit No. 1.

The point is also made that the denial of the application made by complainant's next friend in Suit No. 1 for an order restraining Seidler from prosecuting Suit No. 2, and for a stay of all proceedings therein until the final determination of Suit No. 1, and for the appointment of a receiver *pendente lite* of complainant's property and assets, constituted an "adjudication" of the "present attack on the proceeding in Suit No. 2," and the doctrine of *res judicata* is therefore applicable. It is said that complainant then "had the opportunity to present to the court all her objections to Suit No. 2, including the two principal points relied on" by her "on this appeal, viz: (1) that the court was without jurisdiction in Suit No. 2 of the subject-matter, and (2) that the guardian *ad litem* had not been properly appointed," and 'that, having chosen "to say nothing about these objections," she is now precluded from raising them by the principle thus invoked. It is also urged that appellant's course constitutes a collateral attack upon the "appointment of the trustee" and the "other proceeding." We find these points to be without substance.

As we have seen, the essential design of Suit No. 2 was the appointment of a substituted trustee to administer the express

trust purportedly created by the indenture, and the authority of the trustee therein appointed was so circumscribed. The theory underlying the cited application made by complainant's next friend was that, until the validity of the asserted express trust was determined, a receiver to conserve the assets should be appointed in Suit No. 1, and the execution of the trust stayed. Manifestly, the denial of the relief thus sought did not constitute a conclusive adjudication of the issues now presented for decision. These issues do not arise out of a suit between the same parties for the same cause of action, and the cited principle is therefore inapplicable. There is no identity of issues or subject-matter. The question of the validity (*vel non*) of the declared trust was not at issue in Suit No. 2. The object of that suit was the enforcement of the trust; and it was not incumbent upon complainant to put the integrity of the trust itself in issue in that suit, or to challenge the accountings rendered on the hypothesis of its legal subsistence. Indeed, it is conceded that, in either view of the suit, the validity of the trust was not a proper subject of inquiry. The doctrine of collateral attack has no application here. In the words of the late Vice-Chancellor Backes, "The rule of *res judicata* was invented to promote peace, not to deny justice." *Nagel* v. *Conard, 96 N. J. Eq. 61*.

Lastly, the acting trustee maintains that he is not a party to Suit No. 1, and is therefore not a proper party to these appeals.

There cannot be the slightest doubt of Chancery's power to direct Ruback, in Suit No. 1, to return to complainant the assets and property which belong to her by the terms of this court's *remittitur*, and thus to secure the execution of the decree of this court. For this purpose, he was brought in as a party by an order to show cause; and he became subject to the decretal power of Chancery to obtain performance of this court's mandate. Unless this be so, the proceedings in Suit No. 2 would hinder the execution of the decree of this court in Suit No. 1.

The decree and order under review are accordingly reversed; and the cause is remanded for further proceedings in conformity with this opinion.

*For affirmance*—PARKER, BODINE, WELLS, JJ. 3.

*For reversal*—THE CHIEF-JUSTICE, DONGES, HEHER, PERSKIE, OLIPHANT, RAFFERTY, DILL, FREUND, MCGEEHAN, JJ. 9.