GRACE ISSERMAN, PLAINTIFF-APPELLANT, v. ABRAHAM
ISSERMAN, DEFENDANT-RESPONDENT.

Argued March 21, 1949—Decided April 11, 1949.

*Mr. Richard J. Fitz Maurice* argued the cause for the appellant.

*Mr. Sydney S. Jaffe* (*Messrs. Milton M. & Adrian M. Unger,* attorneys) argued the cause for the respondent.

The opinion of the court was delivered by

CASE, J. The appeal brings up what is in effect a ruling on evidence made in the Court of Chancery by an advisory

master in a marital cause. The Court of Errors and Appeals had directed that certain evidence be taken in a certain way. The advisory master, considering that the meritorious question to be reached by the evidence had been adversely settled by the United States Supreme Court, refused to sign the necessary order. Such a course, on a matter of preliminary practice and procedure, tends toward confusion, misdirection and delay. The master should have allowed the order. That would have brought in the proofs for what they might be worth and would have left the meritorious question open.

The parties were married in New Jersey and resided here. In 1926 Mrs. Isserman filed her bill in our Court of Chancery, as a result of which, on May 18, 1927, she secured a final decree which granted separate maintenance from her husband, Abraham Isserman, with a stated allowance for the support of the complainant and of Harold Isserman, the infant child of the marriage, and the custody of the child to her. On September 23, 1941, the parties, whom we shall refer to as husband and wife, being in court or represented, an order was made modifying the final decree to provide that $45.00 a week should be paid by the husband, $41.50 to the wife and $3.50 directly to the child. On April 18, 1944, the husband filed, in Chancery, his petition, from which the present proceeding stems, and alleged therein that on September 17, 1943, he, then being a citizen, resident and domiciliary of the State of Nevada, filed his suit in the Second Judicial District Court of that state in and for the County of Washoe for divorce against his wife; that the wife entered a general appearance therein, filed her answer and also a counterclaim for affirmative relief by way of absolute divorce and otherwise; that the suit came on for trial and hearing and that both of the parties contested the same fully and on the merits; that the proceedings in New Jersey were fully disclosed and that a stipulation was entered into in open court in the presence of the parties and their respective attorneys whereby it was decreed that the husband pay to the wife certain designated sums of money for her support and that of the minor child then (the time of the filing of the petition

in Chancery) of about the age of seventeen years; that the stipulation was reviewed, considered and approved by the Nevada court; that thereafter the said court stated its findings of fact and conclusions of law and rendered its final decree for divorce, copies of all of which were attached to the petition and made a part thereof; that by the terms of the decree husband and wife were fully divorced and the marriage dissolved and each was discharged from all obligations to the other except in so far as concerned the provisions of the stipulation for the payments of moneys. mentioned above; that the husband had fully complied with the Nevada decree and that the wife had, by reason of the agreement and stipulation, waived her rights to the order of the Court of Chancery for the support and maintenance of herself and the minor child; that the Nevada decree had fully destroyed the subject matter of the New Jersey suit in so far as the same relates to the former marriage and that the stipulation and decree for support of the wife and the infant child had fully destroyed the subject matter of the New Jersey suit in so far as concerns the rights of the wife to moneys from her former husband for the support of herself and the child; and upon those allegations the petition of the husband prayed that the New Jersey decree be modified to provide for the dismissal of the 1926 bill of complaint and that all orders in the cause for the support of the wife and the child be vacated. That, of course, constituted the husband the moving party in an effort to dismiss a New Jersey suit of eighteen years duration and the final decree, with modifications thereof, entered therein. Annexed to the petition were what purported to be the findings of fact, the conclusions of law, and the decree of divorce of the Nevada court. That decree, *inter alia,* orders thus:

"It is further ordered, adjudged and decreed that the provisions herein made in this decree as to all property rights, the right of the defendant to alimony and separate support and maintenance, and all other rights arising out of the marital relation, be, and the same are, in the place of and in the stead of, any and all provisions made for said defendant in that certain action in New Jersey entitled 'In Chancery of New Jersey (Docket 62/538), Between

Grace Isserman, Complainant, and Abraham Isserman, Defendant;' that all obligation of the plaintiff to make any payments under said decree of said Court of Chancery of New Jersey be, and the same is hereby, terminated; that this decree completely supersedes and makes null and void said decree of said Court of Chancery of New Jersey, and said decree of said Court of Chancery of New Jersey is hereby abrogated and henceforth null and void."

 The wife resisted the application in Chancery on the ground that the Nevada decree was obtained by the fraud of the husband upon her, upon the Nevada court and upon the New Jersey court. At the hearing before the advisory master she sought to take testimony in open court on the issue of whether the husband was, in fact and in law, domiciled in Nevada at the time the divorce in that state was procured. The advisory master denied the request and was held by the Court of Errors to have erred in so ruling. *Isserman v. Isserman*, 138 *N. J. Eq.* 140. The opinion states:

"At the trial before the learned advisory master, complainant sought to take testimony in open court on the issue as to whether the defendant was in fact and in law domiciled in Nevada at the time the divorce in that state was procured. This application was denied and, we think, erroneously. * * * The opportunity to cross-examine was denied to the appellant and this was a right to which she was entitled, unless some law, the existence of which has not been brought to our attention, provides otherwise. *It may be that oral proofs may not change the result, but nonetheless orderly process requires its use.* (Italics inserted.)"

The record was accordingly remitted to the Court of Chancery, whose duty it then became to carry into effect the order of the appellate court. *R. S.* 2:29–124. If the husband considered that because of newly arisen conditions that order had become unsound law it was his privilege to go to the Court of Errors and Appeals, setting forth the new matter, and seek a recall of the *remittitur* and a review. When an order of an appellate court goes with its *remittitur* to the court of original jurisdiction, it is there for the purpose of being carried into effect, and not for revision, correction or reversal. *Jewett v. Dringer,* 31 *N. J. Eq.* 586 (*Ch.* 1879). *Cf. Tuttle v. Gilmore,* 42 *N. J. Eq.* 369 (*E. & A.* 1886); *McGrail v. McGrail,* 51 *N. J. Eq.* 537 (*Ch.* 1893). "The

Court of Chancery is under a peremptory duty to execute the *remittitur* of this court (viz., the Court of Errors and Appeals) precisely as it is written, * * . *. This is the obligation * * * even though the *remittitur* be erroneous on its face. The remedy for such rests exclusively in the appellate tribunal." *Oswald v. Seidler*, 138 *N. J. Eq.* 440, 445 (*E. & A.* 1946); *Wemple v. B. F. Goodrich Co.*, 127 *N. J. Eq.* 333 (*E. & A.* 1940). We are not unmindful of a line of cases in other jurisdictions and in some of the federal courts holding that when there has been an intervening decision by the United States Supreme Court the law of the case rule does not apply; but we reserve decision on that point awaiting the coming in of the proofs and developments thereon.

After the record went down the wife presented her petition in Chancery seeking the testimony of named persons in various parts of Nevada, California, New York and New Jersey by oral examination, witnesses residing in New Jersey before a master, and those residing elsewhere before commissioners, bearing upon "the jurisdiction of the Second Judicial District Court of Nevada over the person and subject matter of the *res* and the *bona fideness* of the residence of the defendant in the State of Nevada and the fraud practiced upon the complainant by the defendant." The advisory master treated the application as one to take testimony *de bene esse* solely on the issue of the husband's domicile in the State of Nevada. He considered that under the decision of the United States Supreme Court in the case of *Sherrer* v. *Sherrer*, 334 *U. S.* 343, 92 *L. Ed.* 1429, 68 *S. Ct.* 1087, the application was premature inasmuch as the wife had appeared in the Nevada courts and litigated the merits by submitting to its jurisdiction, that the question first to be determined was whether or not the wife's appearance constituted a submission to the jurisdiction of Nevada and that only on a negative showing thereon would an application to take the other testimony be considered. We think that the advisory master unduly limited the objective of the proposed testimony in view of the statement mentioned above in the wife's petition, viz., that she

wished to dispute the jurisdiction of the Second Judicial District Court of Nevada over the person and subject matter of the *res,* and over the *bona fideness* of the residence of the husband in the State of Nevada and that she wished to establish the fraud practiced upon her by the husband, and also in view of the charge that, not only had a fraud been perpetrated upon her and upon the courts of the State of Nevada, but also upon the Court of Chancery of New Jersey. We take judicial notice of the fact that the husband is a counselor-at-law of this state. The question of whether or not there was a fraud upon the Court of Chancery is of moment to us independently of the related charges of fraud upon the Nevada courts and of fraud upon the wife. Even though the wife had so placed herself that she could not for her own purposes make avail of the husband's fraud, and even though the wife and the husband, by collusion or otherwise, had united in the fraud, there was still a field of inquiry regarding the charge of fraud upon our courts incidental to the effort to void our earlier Chancery proceeding and the decree therein.

The infant son of the marriage was a direct participant in the Chancery decree of September 23, 1941. That child is and has been constantly in the State of New Jersey and was conceded by the husband's petition in the Nevada court not to be within the jurisdiction of that court. Consequently, no agreement between the parties and no decree of the State of Nevada could annul so much of the Chancery decree as ran in favor of the infant. Beyond that, it is difficult to understand by what right the Nevada court undertook to incorporate within its decree a paragraph declaring null and void a decree of the Court of Chancery of New Jersey.

The wife further complains that although she appeared in the Nevada court and was present at the hearing she was denied the opportunity of presenting proof. The official transcript of the proceedings at that trial gives some color of support to that charge. The hearing began at 11:15 o'clock in the morning, and the wife was present in person and represented by two attorneys. The husband testified that before coming into court he and his wife had agreed to a described

property settlement running over a period of years, and one of the wife's attorneys stated that the testimony gave the terms of an agreement as stipulated. Later, the wife's attorneys were asked by the court whether any testimony was to be given on her behalf, and they answered that there was none. There followed a discussion between counsel and the court which bears the construction that the direction which the trial was then taking was not in accordance with the wife's understanding and that the wife was manifesting disagreement. The transcript reads:

"The Court: Does Mrs. Isserman understand that? (Thereupon, a discussion was had between Mrs. Isserman and her counsel without the hearing of the reporter.)

"The Court: The matter will be continued until further order, say until 1:30 this afternoon."

The transcript records a resumption at 2:50 o'clock in the afternoon. The court immediately remarked that an amended answer and cross complaint had just been filed, and the wife's attorney stated that that was so. No reason for the change of pleadings at that late hour is noted in the record. A study of the record does disclose, however, that the original answer and cross complaint charged that the husband had, on various dates, and at specific places, committed adultery with a named woman and that the wife prayed a dissolution of the marriage upon that ground; and the record further shows that the amended answer and cross complaint filed by the wife's attorneys at the opening of the afternoon session of the trial makes other material charges, omits the charge of adultery, and rests the prayer for divorce entirely upon the allegation, now in her pleadings but comprehended within the ground alleged in the husband's complaint, namely, that the parties had lived separate and apart without cohabitation for more than three years then last past. The wife asserts in her answer to the husband's petition in our Court of Chancery that she had instructed her attorney in the Nevada action to file a cross complaint in that suit seeking divorce from her husband upon the grounds of willful desertion and of acts of adultery of which her husband had been convicted in the New Jersey

courts, that such was the answer and cross complaint first prepared and filed and the pleading which, without her direction, knowledge or consent, was withdrawn from the court files during the course of the trial and replaced by the amended answer and cross complaint which merely alleged that she and her husband had lived separate and apart without cohabitation for more than three years.

The Nevada transcript further shows that immediately after the beginning of the afternoon session the wife's attorneys communicated to the court her request that she be placed on the stand and be permitted to testify as to her cross complaint.

"The Court: Is there any testimony different from that elicited this morning?

"Mr. Johnson: It is exactly the same testimony.

"The Court: It is admitted the parties have lived separate and apart for more than three consecutive years without cohabitation?

"Mr. Johnson: Yes.

"The Court: Is the case now submitted?

"Mr. Johnson: The case is now submitted, your Honor."

Whereupon the court announced its decision. If the content of the complaint had remained as it originally was and as the wife claims she supposed it still was, the evidence thereon could scarcely have been "exactly the same testimony" as that which had been given by and in support of the husband in the morning. It, therefore, does appear from the record that the wife, a party to the action, demanded and was, in effect, denied the privilege of testifying in her own case and that her attorneys, while they went through the form of stating her wish to testify, actually belittled and abandoned that request. If the illumination which comes from the wife's statement is truthful, there are strong suggestions of fraud against her and perhaps against the decree subsisting here.

It may be, as was stated by the Court of Errors and Appeals, *supra,* that further proofs will not change the result. Nevertheless it seems that this woman should have an oppor-

tunity to produce her proofs, inasmuch as the matter arises, not on her initiation, but on the effort of the husband to have Chancery annul proceedings which were fully within its jurisdiction when entertained and decrees which concededly were valid when rendered. It is her contention before us that she "was denied, in the Nevada proceedings, any opportunity to present and litigate the issue of fraud and domicile" and that she has been "denied her day in court." And, again, it is possible that the testimony sought to be introduced in Chancery would take the case out of the application of the *Sherrer case.* We are not assuming that that would be so; but it is a possibility in the combined light of the indicated facts and of the assertions made here. It is, of course, incumbent upon the courts of New Jersey, and it was also incumbent upon the courts of Nevada, to accord full faith and credit to decrees rendered by courts of sister states. The Sherrer opinion weighs upon the fact that in that case counsel for the husband—the suit was by the wife—failed to cross-examine or produce evidence in rebuttal. That situation is in part parallel with our own facts, but the decision further states: "It is not suggested that his (the husband's) rights to introduce evidence and otherwise to conduct his defense were in any way impaired." One of the wife's contentions in the instant case is that she was denied the right to introduce evidence and that her defense was thereby seriously impaired. So, too, there are expressions in the *Sherrer decision* that "the parties were given full opportunity to litigate," that the husband gave testimony in the case, that "it has not been contended that respondent was given less than a full opportunity to contest the issue of petitioner's domicile or any other issue relevant to the litigation," and that "if respondent failed to take advantage of the opportunities afforded him, the responsibility is his own." Therefore, we have, potentially, a different framework of facts and issues from that which existed in the *Sherrer case,* or even in the companion case, *Coe v. Coe,* decided and reported simultaneously therewith.

 Inasmuch as the present litigated question is merely one of the admission of proofs and of the manner and order

of taking them and goes not at all to the merits of the controversy, we conclude that the petition for taking testimony orally *de bene esse* in foreign states should have been granted and that testimony orally in the State of New Jersey should be taken by the judicial officer who hears the suit.

The order under review will be reversed and the record remitted to the Superior Court, Chancery Division, for disposition not inconsistent with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, BURLING and ACKERSON—5.

*For affirmance*—None.