STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DOMINICK LeFANTE, DEFENDANT-APPELLANT.

Argued January 4, 1954—Reargued February 1, 1954—Decided March 15, 1954.

586

*Mr. Abraham J. Slurzberg* argued the cause for the appellant (*Mr. J. Arnold Bressler*, attorney).

*Mr. Raymond J. Cuddy* and *Mr. Frank J. V. Gimino*, Assistant Prosecutors, argued the cause for the respondent (*Mr. Frederick T. Law*, County Prosecutor).

The opinion of the court was delivered by
VANDERBILT, C. J.

## I.

The procedural history of this case demands attention if we are to preserve the objectives that have been consistently sought in the rules of court of simplicity, dispatch and an adequate hearing on the merits of each controversy.

The defendant was convicted in the Hudson County Court on three indictments charging carnal abuse. On appeal the Appellate Division of the Superior Court reversed the judgment of the trial court on the ground of the insufficiency of the indictments in failing to state the appellant's age, 23 *N. J. Super.* 511 (1952). We granted the State's petition for certification, 11 *N. J.* 497 (1953), and after argument reversed the Appellate Division, holding that the indictments were sufficient, 12 *N. J.* 505 (1953). Our opinion concluded:

"The judgment of the Appellate Division of the Superior Court is reversed, and the judgment of the Hudson County Court is reinstated."

The mandate provided that

"the record and proceedings be remitted to the said Superior Court—Appellate Division—to be there proceeded with in accordance with the rules and practice relating to that court, consistent with the opinion of this Court."

The defendant petitioned this court for a rehearing on the ground that on the original appeal to the Appellate Division he had asserted other grounds for a reversal of his conviction that the Appellate Division in reversing on the insufficiency of the indictments had failed to consider and that therefore the Supreme Court should consider them in disposing of his appeal despite the fact that these points were not briefed, argued or mentioned on the appeal here. Indeed, they were not even brought to the attention of this court on the appeal, though they were alluded to briefly in the

defendant's answer to the petition for certification. We denied the defendant's petition for a rehearing and remanded the cause. In accordance with our opinion and mandate the Appellate Division refused to permit the defendant to re-argue the additional points raised but not passed on there, saying that its "only function [in the circumstances] is to carry into effect the mandate of the Supreme Court and that plainly requires that the judgment of the Hudson County Court be reinstated," 27 *N. J. Super.* 320, 322 (1953). The defendant then sought a reargument there, which was denied. From the judgment of the Appellate Division of the Superior Court the defendant now appeals, claiming that his constitutional rights have been violated.

Although admitting that there are no cases in point here, the defendant contends that it is the duty of the Appellate Division to take up the appeal "where it left off" at the time of the first appeal to this court and therefore that on the coming down of the mandate it should have considered the other points previously raised by the defendant and not passed on by that court. The defendant also argues that where there is a right of appeal under our Constitution he is being denied that right as well as due process and the equal protection of the law by a denial of the right to be heard in full. The State, on the other hand, insists that if the defendant wished to reserve any of the points he argued below he should have filed a cross-petition for certification, contending that any appeal taken on certification is automatically limited to the matters set forth in the appeal for certification.

On this important question of appellate practice we do not find ourselves in accord with the contentions of either side. On an appeal on certification as distinguished from an appeal of right the appellant is limited to the questions on which he sought certification, *R. R.* 1:10–9, for it would be manifestly unfair to use one set of points to obtain certification and then to argue different grounds on appeal after certification had been granted. But a respondent who is merely seeking to maintain his judgment may brief and argue on the appeal any points that will sustain his judg-

ment and if he does not brief and argue such points he will be taken to have waived them. Only when the respondent in certification is not relying on his judgment below but is seeking affirmatively to overrule or modify it must he cross-petition for certification. Thus, in *Liberty Title & Trust Co. v. Plews*, 6 *N. J.* 28 (1950), in an appeal on certification granted, the respondents attempted to obtain a reversal of the judgment of the Appellate Division on certain points that had not been presented by a cross-petition for certification. We declined to consider these arguments saying:

"These questions, however, are not properly before us. A party may not, following the granting of his opponent's petition for certification, attack the judgment under review without himself having successfully petitioned for certification. If he is to have this court review the action of the court below insofar as it is adverse to him, he must follow the same procedure as if his adversary had taken an appeal as of right. Just as there he must take a cross appeal, so here he must make a cross-petition for certification and succeed on his application. This is the procedure contemplated and provided for by the rules and it has been recognized as a matter of practice. *Hopler v. Hill City Coal & Lumber Co.*, 5 *N. J.* 466 (*Sup. Ct.* 1950). Indeed, it would not be reasonable to provide otherwise and thereby give a respondent on an appeal following certification greater rights than a respondent on an appeal taken as of right. Since the exceptants herein did not petition this court for certification to review the decision of the court below insofar as it was adverse to them, they may not here attack that judgment and we need not adjudicate the questions they now seek to raise." (6 *N. J.* at *page* 45.)

The rule is entirely different, however, where the respondent as here is seeking merely to sustain the judgment below. He is not seeking affirmative relief and accordingly a cross petition for certification is not required.

All the arguments on which the respondent relies in upholding his judgment below must be presented to this court or be deemed to be waived. This process enables us to arrive at a decision on the merits of the case, since we are interested in the propriety of the action appealed from rather than in the reasons advanced by the court below in support thereof, *Hughes v. Eisner*, 8 *N. J.* 228, 229 (1951), *Marchitto v. Central Railroad Co. of New Jersey*, 9 *N. J.*

456, 463 (1952). Certainly the court cannot be expected to determine the merits of the respondent's contentions if he fails to brief and argue these points on the appeal here. Just as the appellant seeking a reversal of the judgment below must present all arguments in support of his stand, so the respondent who wishes to uphold the judgment below must brief and argue all of the points upon which he relies. If either party fails to present all of the points on which he rests his case he is deemed to have waived them and he cannot at some later stage in the same proceeding, as here *e. g.*, on the remand to the Appellate Division, argue points which he has in effect abandoned.

■■ It follows from what we have said that it would have been improper for the Appellate Division of the Superior Court to have permitted the defendant on the remand to have argued there the questions not previously disposed of there or in this court because not briefed, argued or even mentioned on the appeal here. This is so for two reasons: first, because the Appellate Division is bound to respect the mandate of this court, *Wemple v. B. F. Goodrich Co.*, 127 *N. J. Eq.* 333, 335 (*E. & A.* 1940), *Oswald v. Seidler*, 138 *N. J. Eq.* 440, 445 (*E. & A.* 1946), *Isserman v. Isserman*, 2 *N. J.* 1, 5 (1949), and second, because to do so would result in successive appellate proceedings in a single cause (of which this case is a glaring example). Such successive appeals would engender intolerable delay in the ultimate decision of cases in that part of the judicial establishment where delay is most to be avoided. Any undue delay in finally disposing of appeals not only breeds more appeals and thus serves to clog the appellate courts, but also such delay and the consequent unnecessary congestion in the appellate courts leaves the trial courts without guides on those questions where guidance is most needed.

■ It is one of the underlying principles of the Judicial Article of the Constitution and of the rules of court that the litigants in each case are entitled to one trial and to one appeal as of right, with an additional permissive appeal in certain specified unusual situations. It is a cardinal prin-

ciple with us to avoid, except in the special instances referred to, successive, piecemeal appeals. For an example of the working of the same principle in the field of interlocutory appeals see *R. R.* 2:2–3(*b*). By so doing we have avoided the delay and the congestion that all too often prevail in judicial systems that freely permit piecemeal appeals and interlocutory reviews. At the same time, by permitting each party to raise on appeals, subject to the salutary limitations hereinbefore set forth, all of his points relied on below full justice is done to the individual litigant.

■ It necessarily follows that as a matter of procedure the judgment of the Appellate Division of the Superior Court should be affirmed. The defendant's counsel at the argument of the present appeal, however, made out a case of surprise, this particular point never having been before us. Accordingly, notwithstanding our *unanimous* views on the procedural question here involved, we called for briefs and argument on the other points of the defendant that had not been considered either in the Appellate Division or here in an endeavor, as in every case before us, to do justice on the merits. In doing so, however, we wish to make it very clear that we consider the procedural principle of one appeal disposing of an entire controversy so important to the sound operation of the judicial system that we will not hereafter waive compliance with it, for hereafter counsel will not be able to plead surprise.

## II.

It will serve no purpose to narrate the sordid details of the 53-year-old defendant's heinous conduct toward a nine-year-old girl on at least three occasions. Suffice it to say that the child's story, both on direct and cross-examination, carries conviction.

The defendant urges several points as additional grounds for reversal:

■ 1. He argues that there was a failure to establish that there was a touching of his genital organs to the child's,

which is an element of the crime of carnal abuse. The child testified that there was such a touching. After the testimony was in, defendant's counsel made a tardy objection to counsel's leading the witness, to which the trial court replied.

"Mr. Miller: I object to leading the witness.
The Court: Yes. Please be careful about leading. I will sustain the objection."

No effort, however, was made to strike the answer and the very next question, which was not objected to, presupposes that the previous answer stood:

"Then after he did that, what happened?"

There can be no question as to the competency of the answer given to the question to which a tardy objection was made, for the objection went solely to form. True, such testimony was given only as to the first of the three offenses charged against the defendant and accordingly there is a deficiency of proof as to the second and third indictments that necessarily leads to a reversal of the judgment entered on them. But as to the first indictment there was sufficient proof to go to the jury and in the light of all of the case we cannot say' that its verdict on the first indictment was not justified.

2. The defendant attacks the second count of each of the three indictments as well as the sufficiency of the evidence to sustain these counts. The second count of each of the three indictments charged that the defendant "did commit an assault upon * * *, aged nine years, contrary to the provisions of R. S. 2:110–2." Inasmuch as this statute sets forth six specific crimes, the defendant claims he was not informed of the specific crime charged against him. The first count of each of the three indictments, however, charged carnal abuse; from this and from the reference to the statute it appears that the charge in the second count of each indictment was assault with intent to commit carnal abuse. In any event, a bill of particulars was available to

him under the rules, *R. R.* 3 :4–6. Finally, the conviction was not for the assault with intent to commit carnal abuse, since that charge merged in the judgment of conviction of carnal abuse. This being so, we do not need to examine the claim that the evidence does not establish intent. There is obviously no merit to this point.

3. The defendant claims that he suffered manifest injury from the medical testimony of the doctor who examined the girl more than two years after the first offense. He testified that her hymen had been partly ruptured and healed. The defendant claims that this testimony was too remote and that the doctor never connected the defendant with carnal abuse. Naturally the doctor could not connect him with the crime, but the victim without question identified the defendant as the guilty person. The testimony of the doctor was relevant. The issue of remoteness of medical testimony is a matter resting in the sound discretion of the trial court, *State v. Shiren*, 9 *N. J.* 445, 452 (1952). The defendant had the right to cross-examine the doctor, as he did, to show that this sort of rupture was not uncommon in children. The defendant made no effort to call any other medical witness. We fail to see how the testimony was prejudicial.

4. The defendant asserts that there was prejudicial error in permitting the victim's mother to testify. All she actually testified to was that she went to police headquarters and signed the complaint against the defendant by way of explaining how the case started. There was clearly nothing wrong or prejudicial in this testimony. The trial court properly ruled out the conversations of the mother with other people.

5. The defendant maintains that the court erred in failing to instruct the jury to ignore certain testimony of the child concerning similar offenses by the defendant on other occasions. First of all, no such request to charge was asked and, secondly, no objection was made to the charge. Actually the judge charged the jury to limit their consideration to the three specific crimes set forth in the indictments.

The defendant invokes the plain error rule, *R. R.* 1:5–1, but without any foundation on which to seek its application.

After examining all of the additional points raised by the defendant, we find no error except as above mentioned in point 1 with respect to the second and third indictments. Inasmuch as the judgment of the trial court was that the sentences on all three indictments were to run concurrently, the defendant has not been harmed by the sentence imposed by the trial court. We accordingly affirm the judgment of the Appellate Division of the Superior Court on the first indictment and reverse as to the second and third indictments.

Heher, J. (dissenting). I would reverse the judgment of conviction for error in the admission of the evidence of a healed partial rupture of the child's hymen found on the physical examination had more than two years after the time of the alleged first offense.

Considered in relation to the particular circumstances, especially the equivocal and uncertain evidence of actual penetration, if there was any evidence at all, the condition of the hymen so long after the time of the asserted offense was too remote to have probative value. That it was prejudicial can hardly be gainsaid; it may well have been the determining factor; indeed, I have no doubt that to the lay mind it was deemed conclusive of guilt. And the delay in making the complaint that initiated the criminal proceeding has its disturbing connotations.

I do not read the second count of these indictments as charging an offense denounced by *R. S.* 1937, 2:110–2.

But I concur in all that the Chief Justice says respecting the principles of appellate procedure, made the subject matter of Part I of his opinion.

Wachenfeld, J. (dissenting). I am in accord with the majority opinion as to the disposition of the procedural question. Other than this phase of it, I must dissent.

This is an aftermath of the main case, already decided by our court, 12 *N. J.* 505 (1953). We divided four to three. The majority opinion made new criminal law and for the first time held it was no longer necessary to allege in the indictment itself the requirements as stated in the statute with reference to the age of the defendant.

I did not agree with it then nor do I now, but I am of course bound by the opinion. Some of the arguments on this second hearing go to the age of the defendant, and although they have merit in my view of the case, I am still in the minority. There are, however, two other points which I think require consideration and plainly call for a reversal.

It is entirely factual as to whether or not the evidence in this sordid case brings it within the bounds of carnal abuse as recognized by our decisions and definition, which is clear-cut and unequivocal and has stood for many years. *State v. Hummer*, 73 *N. J. L.* 714 (*E. & A.* 1906).

If one question on the direct examination of the complaining witness, which was objected to and the objection sustained, is eliminated from the record, there is not the slightest bit of evidence in this case bringing it within the admitted definition of the crime charged.

What, then, is our obligation under the circumstances, with the record as it now stands before us? The defendant's interests were not fully protected as no motion to strike the answer from the record was made. Technically it is still there, but the intent of the court was clear and evident and there can be no doubt as to the purport of the ruling. I hesitate in assuming that as a court of law and justice we have a right under these circumstances to ignore the court's ruling and still consider the answer merely because of a failure to make the customary motion suggested by our practice.

This type of case is usually so repulsive to the lay mind as to cause an explosive and emotional rejection of the customary protective presumptions in a criminal case; but no matter how vicious or despicable the crime may be, there

is nothing justifying the curtailment of the applicable legal doctrines and constitutional safeguards by judicial interpretation. The rights of an accused to a fair trial and the constitutional guarantees are not to be impaired by reason of the nature of the crime charged, nor will the public be benefited by denying the defendant essential justice. Judicial approval of such inroads lays the foundation for other invasions upon the freedoms we have always thought were ours.

This case has an unusual factual foundation. After the alleged commission of the crime, the matter lay dormant for over two years. No criminal complaint was made; no prosecution ensued. One gathers from the evidence that the matter was disposed of on some sort of promise made by the defendant's sister. We cannot even surmise as to what it might have been, but the record informs us that more than two years thereafter the prosecution was started by the making of a complaint. These circumstances are part of the record and must be taken into consideration. I am compelled to conclude that the testimony was insufficient to sustain the crime of carnal abuse of which the defendant was charged.

There is another reason why I must vote for a reversal. The State offered the testimony of a physician who examined the child in question on March 3, 1950, more than two years after the commission of the offense charged. His testimony was objected to as too remote and because there was no connection shown that what he found was caused by any act of the defendant. The testimony did not in any way connect the defendant with the commission of the crime charged, nor does it show the physical condition was caused by any act of the defendant.

The patent remoteness is obvious, and no authority is cited to support the admittance either by the State or this court. I doubt if there is any; my research has not disclosed it. Yet the defendant's conviction may well be attributed to the admitted evidence, although it was so remote in point of

time as to make its value uncertain and speculative. Remoteness of such magnitude leaves nothing to discretion.

I would reverse the judgment of conviction below.

*For modification*—Chief Justice VANDERBILT, and Justices OLIPHANT, JACOBS and BRENNAN—4.

*For reversal*—Justices HEHER, WACHENFELD and BURLING—3.