60 N.J. Super. 399 (1960)
159 A.2d 411
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD A. FLECKENSTEIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1960.
Decided March 28, 1960.
*401 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Edward A. Fleckenstein argued the cause for appellant, pro se.
Mr. Frank A. Dolan, Sussex County Prosecutor, argued the cause for respondent.
The opinion of the court was delivered by HANEMAN, J.A.D.
Defendant Edward A. Fleckenstein appeals from a judgment of conviction after a trial without a jury before the Sussex County Court based upon two indictments charging acts of lewdness and carnal indecency in violation of N.J.S. 2A:115-1. He also appeals from the trial court's denial of his motions to take additional testimony and for a new trial.
Defendant was charged with committing acts of fellatio upon the persons of W, the complaining witness at the trial, and one R, presently a resident of New Castle County, Delaware, who could not be located and served with a subpoena requiring his presence at the trial, pursuant to the provisions of the Uniform Act to Secure the Attendance of Witnesses from without a State, N.J.S. 2A:81-18.
At the time of the alleged offenses on June 9 and June 19, 1957, W and R were 16 and 15 years of age, respectively; defendant was an adult. As a member of the New Jersey and New York Bars, defendant personally conducted his own defense.
Testimony was introduced at the trial demonstrating that defendant was well-known to the youth in the community of Hamburg and vicinity, and that he frequently associated with youngsters.
On June 22, 1957, after receiving a series of anonymous telephone calls reporting that a man in the Hamburg area *402 had been seen associating with young boys and picking them up on the highway, the state police, after a brief surveillance of the car with the reported license registration H/F 400, intercepted said vehicle. Defendant was identified as the driver and W as the passenger. As a result of the questioning that followed, defendant was arrested and, with W, was escorted to the Sussex substation of the state police where statements were taken.
W, who at the time of the trial was serving in the United States Army as a military policeman, told of how he had met defendant and how defendant had often given him rides in his car and bought him snacks at various times. The sordid facts of the alleged sexual acts performed upon W need not be detailed here. W described the meetings with defendant by himself on June 9 and with R on June 19, 1957, and the events that followed. He further testified that he was not a willing participant in the alleged activities with defendant.
Defendant denies having engaged in sexual perversion with either W or R. He contends that the United States Army, the municipal and county court judges, the prosecutor, and the state police are all against him, even though he is completely innocent of the crimes charged. He accuses the state police and the municipal court judge of forgery and perjury in forging the complaint against him, alleging that the complaint he saw when apprehended on June 22, 1957 specified the date of May 25, 1957 as the date of the alleged offense with W rather than that of June 9, 1957 as set out in the present complaint. He further charges that the prosecutor misrepresented a material fact to the court in that he withheld a statement signed by W in which the latter allegedly named May 25, 1957 as the date of the first charged offense. In short, defendant alleges that the conviction from which he is here appealing is the result of a vicious plot "to frame the defendant and involve defendant in trouble." In his brief, for example, defendant asserts:
*403 "The long standing disputes and feuds between defendant and the Army, * * * his heading a McCarthy organization, his arrest in Germany by the Army and forcible expulsion from that country and his law suits and threatened suits against the Army, play an obvious role."
Stating that this case resolves itself into the question of whom the court believes from the testimony presented, the trial judge concluded:
"[A]fter giving this a great deal of thought and after weighing all the testimony regarding this act, and considering the collateral issues that have been brought in here to test the credibility of certain individuals, the one inescapable conclusion that I come to is that this defendant is guilty of the charges * * *." (Emphasis supplied.)
The trial judge denied defendant's motions for taking additional testimony and for a new trial on the grounds that the former motion was, in reality, a motion for a new trial, it was not brought within ten days, and it was not based on newly discovered evidence.

I.
Defendant asserts that his conviction must be set aside because of a lack of corroboration of W's testimony. He cites State v. Lefante, 14 N.J. 584 (1954), as authority for the proposition that in morals cases such as that sub judice, corroboration is required in order for the State to obtain a conviction. However, the Lefante case, in which the defendant was appealing from a conviction of carnal abuse of a nine-year-old girl, does not so hold. To the contrary, the Supreme Court clearly stated therein, at page 592, "Suffice it to say that the child's story, both on direct and cross-examination, carries conviction." (Emphasis supplied.) It was claimed by defendant in Lefante that he was prejudiced by the testimony of a doctor who had examined the complaining witness more than two years after the first charged offense and found that her hymen had been partly *404 ruptured and healed. This testimony, argued defendant, was too remote, and furthermore, the doctor never connected the defendant with carnal abuse. The court held, however, that the complaining witness herself had identified the defendant as the guilty person, and that although the testimony of the doctor was relevant, it was not prejudicial to defendant since he cross-examined the doctor in order to show that such a rupture was not uncommon in children. The corroboration issue was never raised or discussed. Certainly the court, by its treatment of the issue of whether or not the doctor's statement was admissible, did not intend to convey the impression that said statement was necessary corroboration of the child's story. The only question before the court was whether this testimony was properly admitted by the trial judge and, if not, whether its admission was prejudicial to defendant.
Defendant cites People v. Oyola, 6 N.Y.2d 259, 189 N.Y.S.2d 203, 160 N.E.2d 494 (Ct. App. 1959), and People v. Porcaro, 6 N.Y.2d 248, 189 N.Y.S.2d 194, 160 N.E.2d 48 (Ct. App. 1959), as authority for the argument that corroboration is required in all cases "on moral subjects." An examination of these opinions discloses that they are not authority for the principle so urged.
In the former case the indictment concerned a morals charge by a daughter against her father and in the latter case by a stepdaughter against her stepfather. In both instances the complaining witness was under 12 years of age. Section 392 of the N.Y. Code of Criminal Procedure provides that when in criminal proceedings a child under 12 years of age does not, in the opinion of the court or magistrate, understand the nature of an oath, the unsworn statement of the child may be received, "But no person shall be held or convicted of an offense upon such testimony unsupported by other evidence." The court extended the legislative mandate for corroboration to instances involving the testimony of children under 12 years of age even though sworn. It is plain the court was influenced in its conclusion *405 by the specific section of the New York statute above cited. This State has no comparable statute, and the cases cited are therefore not apposite.
The rule at common law and in most jurisdictions today is that in the absence of statute, a conviction for a morals or sex offense may be sustained on the uncorroborated testimony of the victim. 7 Wigmore on Evidence, § 2061, p. 342 (3d ed. 1940); Annotation, 60 A.L.R. 1124, 1125 (1929). New Jersey statutes generally do not require corroboration for a conviction for a morals or sex offense. In the exceptional cases where the Legislature intended to impose the requirement of corroboration for the conviction of a crime, it did so expressly as, for example, in N.J.S. 2A:142-3, dealing with the crime of seduction, and N.J.S. 2A:148-1, dealing with the crime of treason. The crime with which defendant herein is charged, as defined in N.J.S. 2A:115-1, does not require corroboration of the complaining witness' testimony.
State v. Andoloro, 108 N.J.L. 47 (Sup. Ct. 1931), like the Lefante case, supra, involved a charge against the defendant of carnal abuse of a minor child. The court therein, although inclined to believe that there was corroboration in fact, expressly stated, at page 50, "But whether so or not, corroboration of the complaining witness was not legally essential to a conviction." See also State v. Cohen, 108 N.J.L. 216 (Sup. Ct. 1931), where the court upheld a conviction of defendant for an act of lewdness and carnal indecency, apparently based upon the sole testimony of the complaining witness. In State v. Welsch, 29 N.J. 152 (1959), defendant was convicted of committing an act of open lewdness in violation of N.J.S. 2A:115-1. The State's case rested entirely upon the testimony of the complaining witness, which was not corroborated in any respect. Although the conviction was reversed, the court's decision was based solely upon the grounds that the prosecutor had made highly prejudicial remarks in his summation to the jury and not on the grounds, as urged by defendant therein, *406 that the verdict of the jury was contrary to the weight of the evidence. The court, impliedly at least, recognized that corroboration of the complaining witness is not necessary in cases of this nature, and stated, at page 155:
"[I]t is quite apparent from the record that the whole case turned upon the credibility to be given to the testimony of the complaining witness as contrasted with the complete denial of the defendant under oath. Even though there were minor inconsistencies and conflicts in the State's evidence, the issue nevertheless resolved itself into a contest between two versions of the truth, a situation always presenting a jury question.
"It may well be that it would seem improbable that a man would act the way the defendant is described by the State as having acted, but this conclusion is buttressed by faith in human nature and experience with the normal standards of human behavior, which unfortunately do not always prevail."
The Pennsylvania courts uniformly hold that in cases of this nature the uncorroborated testimony of the victim is sufficient to sustain a conviction. Commonwealth v. Allabaugh, 162 Pa. Super. 490, 58 A.2d 184 (Pa. Super. Ct. 1948); Commonwealth v. Ebert, 146 Pa. Super. 362, 22 A.2d 610 (Pa. Super Ct. 1941). A fact situation similar to that sub judice was presented in the recent case of Commonwealth v. Nestor, 183 Pa. Super. 350, 132 A.2d 369 (Pa. Super. Ct. 1957). Defendant therein was convicted of having had homosexual relations (sodomy) with two young men on various occasions. Unlike the instant case, however, the two young men were admittedly willing participants in the sordid sex activities. On appeal, defendant contended that the verdicts of the jury were against the weight of the evidence. The court, 132 A.2d, at page 372, held that:
"From necessity a conviction of sodomy generally must rest on the testimony of the victim or accomplice alone (citing cases). Hoover in the one case and Dietrich in the other were both accomplices and acknowledged sodomists. However, there is no rule of law which invalidates a conviction on the uncorroborated testimony of either of them * * *." (Emphasis supplied.)
*407 In any event, continued the court in Nestor, the surrounding circumstances provided sufficient corroboration of the complaining witness' testimony. The facts held to constitute adequate corroboration are quite similar to those of the instant case, supra. Defendant therein, like defendant Fleckenstein, was a man of good family and affluent financial circumstances; he was a college graduate, 27 years old at the time of the trial (Fleckenstein is not only a college graduate but, as noted, a member of the New Jersey and New York Bars as well); his education and cultural background was far above the average. And yet in both cases the defendants frequently associated with relatively uneducated youths, many years their junior. "Certainly," wrote the Pennsylvania court, at page 372, "defendant's association with these three persons, so far out of his class, was a factor for the jury to consider in weighing the testimony." And the trial judge in the case sub judice stated that:
"The one thing that impresses the Court in this matter is the fact that it seems for some unknown reason that the youth in this community of Hamburg and the vicinity there seem to gather around the defendant. Now it either got around that this defendant was a good fellow to be with or he did certain things. I don't know. Of course, the Court can draw legitimate inferences from the facts that are shown in the case * * *."
Furthermore, in the instant case, State's witness C testified that defendant Fleckenstein tried to perform the same acts upon him that he did upon W, but that he only succeeded in putting his hand on his, C's leg. When asked if defendant ever expressed any sort of a sexual proposition to him, C replied in the affirmative.
The nature of the offenses charged in the case sub judice makes it highly unlikely that the State could ever produce direct corroborating evidence of the specific acts. In the words of the trial judge, "[T]his is the type of case where you don't take motion pictures of this sort of thing * * *."
Unless and until the Legislature sees fit to require corroboration *408 of the complaining witness' testimony in a case of this nature, we must hold that no such additional proof is necessary.

II.
Defendant contends that the maxim of "falsus in uno falsus in omnibus" applies in the instant case as against the testimony of W. The "false about one fact false about all" rule may be invoked by a trial judge when a witness intentionally testifies falsely as to some material fact. However,
"The maxim `falsus in uno falsus in omnibus,' is not a mandatory rule of evidence, but rather a presumable inference that a jury [or judge sitting without a jury] may or may not draw when convinced that an attempt has been made to mislead them by a witness in some material respect."
State v. Guida, 118 N.J.L. 289, 297 (Sup. Ct. 1937), affirmed 119 N.J.L. 464 (E. & A. 1938); see also State v. Wise, 19 N.J. 59, 78 (1955). Defendant makes numerous assertions charging that W's entire story is simply part of a scheme instigated by many individuals and groups desiring to discredit him. His brief is replete with rather implausible allegations against not only W and his friends, but against the United States Army, the municipal and county judges, the prosecutor, and the state police. However, the trial judge, who had an opportunity to see the witnesses and hear their testimony, chose not to believe defendant's charges. Concluding that the State's evidence was the more credible, the trial judge arrived at "the one inescapable conclusion" that the defendant was guilty as charged. He was satisfied that W did not lie as to any material fact, the proof of which was necessary for conviction. The verdict of a court sitting without a jury should not be set aside as against the weight of the evidence unless it convincingly appears that it has no support in the proofs.

*409 III.
Defendant alleges that the trial court erred in denying his motions for taking additional testimony and for a new trial. R.R. 3:7-11 reads as follows:
"(a) The court may grant a new trial to a defendant if required in the interest of justice. If trial was by the court without a jury the court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made at any time, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 10 days after the verdict of finding of guilty, or within such further time as the court may fix during the 10-day period."
The trial court was correct in its ruling that defendant's motion for taking additional testimony was in reality nothing more than a motion for a new trial. If the motion is addressed to a court following a trial without a jury, the court may, in the interest of justice, vacate the judgment, take additional testimony and direct the entry of a new judgment. Since defendant's motion was neither made within ten days after he was found guilty nor based upon newly discovered evidence, and since defendant did not move during the ten-day period for an extension of time within which to move for a new trial, the motion was properly denied. Moreover, "Such motions are addressed to the sound discretion of the court; and the exercise of the discretion will not be interfered with on appeal unless a clear abuse of it is shown." State v. Smith, 29 N.J. 561, 573 (1959).
Affirmed.