817 A.2d 337 (2003)
358 N.J. Super. 107
Tracey CAPELL, Plaintiff-Respondent,
v.
Pierce CAPELL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 11, 2003.
Decided March 7, 2003.
*338 Edward Fradkin, Freehold, argued the cause for appellant (Jacobowitz, Grabelle, Defino, Latimer and Fradkin, attorneys; Mr. Fradkin, of counsel and on the brief).
George G. Whitmore, Red Bank, argued the cause for respondent (Ansell, Zaro, Grimm & Aaron, attorneys; Mr. Whitmore, on the brief).
Before Judges SKILLMAN, CUFF and LEFELT.
The opinion of the court was delivered by CUFF, J.A.D.
Defendant appeals from a final restraining order entered pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. Although we affirm the order, we express our disapproval of a procedure suggested by the trial judge, agreed to by the litigants, but ultimately abandoned.
At the conclusion of the January 18, 2002 hearing on plaintiff's application for a final restraining order, the trial judge referred to defendant's testimony about comments made to the Freehold police that he was willing to take a lie detector test. The trial judge suggested that the parties should consider submitting to lie detector tests. He said:
Before anyone says anything, maybe you attorneys want to consider something that I just thought about. This is obviously a he said, she said. And Mr. Capell said, during the [course] of his testimony, I offered to take a lie detector test, and I'd pay for it. You want to subject them both to lie detector tests, at his expense? And I'll wait, on the issue of whether or not he pushed her.
After securing both parties' consent, the judge commented that he would make the requisite findings of fact if the results of the test were inconclusive.
It is apparent from this record that the trial judge was prepared to abdicate his decision-making responsibility and adjudicate the matter solely based on the results of a test administered by a court-selected polygraph expert. Trial judges have been admonished many times and in various contexts not to abdicate decision-making responsibility to experts. For example, in P.T. v. M.S., 325 N.J.Super. 193, 738 A.2d 385 (App.Div.1999), a case involving an allegation of parental sexual abuse, this court addressed the limitations *339 of professionals requested to appraise private conduct. We said:
The burden of decision-making in the face of ... conflict is one of the heaviest any judge faces. There being no litmus test for truth, we understand the temptation to place too much reliance upon experts.... Nevertheless, we cannot allow experts to shoulder excess responsibility or authority, nor trial judges to cede their responsibility and authority. The court must not abdicate its decision-making role to an expert.
[Id. at 216, 738 A.2d 385.]
Accord In re D.C., 146 N.J. 31, 59, 679 A.2d 634 (1996) (the final determination of the threat posed by a Megan's Law offender lies with the court, not psychiatrists or psychologists); State in the Interest of C.A.H. & B.A.R., 89 N.J. 326, 343, 446 A.2d 93 (1982) (court cannot give controlling effect to the opinion of experts on the issue of the prospect for rehabilitation of a juvenile offender).
Furthermore, credibility determinations are reserved to the trier-of-fact, judge or jury, not to an expert. In State v. Papasavvas, 163 N.J. 565, 751 A.2d 40 (2000), a psychiatric expert produced by the State not only expressed a direct opinion of the defendant's guilt of the many crimes charged, but also commented on his credibility. Id. at 610-11, 751 A.2d 40. Defendant had reported to a treating physician that he suffered hallucinations and heard voices. Id. at 580, 751 A.2d 40. The psychiatrist stated that defendant ran to evade the police, not because he heard voices urging him to run. Id. at 610, 751 A.2d 40. The Court condemned not only the expert's direct opinion on the defendant's guilt but also his comments on the defendant's credibility. Id. at 612-13, 751 A.2d 40. See also State v. Jamerson, 153 N.J. 318, 341, 708 A.2d 1183 (1998) (medical examiner may not comment on a witness's credibility); State v. Michaels, 136 N.J. 299, 323, 642 A.2d 1372 (1994) (witness may testify to the coercive or suggestive propensities of interview techniques but not offer opinion of the child witness's credibility); State v. Odom, 116 N.J. 65, 77, 560 A.2d 1198 (1989) (expert may not express direct opinion that defendant is guilty of the crime charged).
The consent of the parties to the trial judge's suggested procedure did not legitimize the procedure. Once the procedure was suggested, any party who resisted the proposal would reasonably have concerns that the trial judge might draw an adverse inference from their reluctance to subject themselves to the test.
In the face of an abdication of decision-making responsibility, we would ordinarily remand for the required fact-finding by the appropriate trier-of-fact. Here, the suggested procedure did not go forward due to the requirements of the test administrator. He initiated an inquiry about the health status of each party. In fact, he required a note from defendant's physician. The tests were not administered when defendant's physician stated that defendant's cardiac condition dictated that he avoid stressful situations and the test administrator declined to proceed.
Defendant argues that his failure to proceed with the test allowed the trial judge to draw an adverse inference regarding his credibility. The trial judge, however, was informed that the test administrator initiated the inquiry regarding defendant's health and refused to proceed in the face of the physician's note. Under these circumstances, there could be no reasonable basis for the trial judge to draw an adverse inference, and the record reveals no suggestion that he did so. Therefore, we proceed to consider defendant's argument that the record does not support entry of the final restraining order.
*340 On November 21, 2002, defendant Pierce Capell received a letter from plaintiff Tracey Capell's attorney that he had been retained to represent her in a divorce proceeding. The parties continued to live together in the marital home although they utilized separate bedrooms.
On the morning of January 16, 2002, plaintiff testified that there was a heated verbal disagreement concerning the children. The couple argued downstairs then defendant went upstairs to the master bedroom to take a shower. Plaintiff followed him and resumed the argument. According to plaintiff, defendant became enraged, shook his fist in her face, grabbed her arm and shoved her into the bathroom counter. Defendant conceded that he was angry but denied striking or shoving his wife. Rather, he testified that he wanted to end the argument and asked her to leave the doorway of the bathroom three times. He admitted that he waved his open hand towards his wife in the course of asking her to move but denied putting his fist near her face or shoving her into the counter.
The trial judge found that defendant was enraged, shook his fist in plaintiff's face and shoved her into the counter. He supported his finding that defendant's recollection of events was not credible by referring to the testimony of the sheriff's officer who served defendant with the temporary restraining order. The officer described defendant as "belligerent," "very aggressive, very upset." The trial judge concluded that defendant's conduct constituted assault and an act of domestic violence. These findings are supported by substantial credible evidence in the record[1] and are consistent with law. Cesare v. Cesare, 154 N.J. 394, 411-12, 713 A.2d 390 (1998).
Affirmed.
NOTES
[1] The trial judge invoked the "false in one, false in all" maxim to support his credibility findings. This rule is simply one of many aids which the trier-of-fact may utilize to evaluate the credibility of a witness. It should be used only when the trier-of-fact finds that the witness intentionally testifies falsely about a material fact. State v. Fleckenstein, 60 N.J.Super. 399, 408, 159 A.2d 411 (App.Div.1960). Stated differently, the trier-of-fact should not utilize this maxim in the face of a falsehood about a non-material fact.