**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3875-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

L.F.T.,[1]

    Defendant-Appellant.

_____

Submitted February 3, 2021 – Decided February 17, 2021

Before Judges Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Municipal Appeal No. 0031-18.

L.F.T., appellant pro se.

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Jennifer B. Paszkiewicz, Assistant Prosecutor, on the brief).

PER CURIAM

---

[1] We use initials to protect the identity of the parties' child. See R. 1:38-3(d)(12). We use pseudonyms for ease of reference.

Defendant L.F.T. appeals pro se from his conviction for simple assault, N.J.S.A. 2C:12-1(a)(1), following a trial de novo in the Law Division. We affirm because the findings supporting the conviction are based on substantial, credible evidence in the record.

I.

The facts were established at the one-day municipal court trial, during which defendant's estranged wife, K.T. (Kim), and the parties' son, S.T. (Steven), testified on behalf of the State. Defendant elected not to testify, but presented the testimony of Douglas Nixon, a caseworker employed by the Division of Child Protection and Permanency (DCPP). The State also moved into evidence Kim's handwritten statement to police.

On June 26, 2017, defendant lived in Moorestown with Kim and their two children, thirteen-year-old Steven and his younger sister. According to Kim, around dinnertime on that date, she dropped off the children at home after summer camp so that she could park her van in a nearby lot. Shortly thereafter, Kim entered the home and saw Steven "in a fetal position," with defendant "hovering over" and yelling at the child. Steven was crying and defendant appeared to be intoxicated. Kim left the room to compose herself.

A-3875-18

When she returned moments later, Kim told defendant she was going to make a call.

At that point, defendant approached Kim and demanded her cellphone. Kim told defendant her phone was in the van. As Kim attempted to reach for the van keys located on a rack near the front door, defendant grabbed her arm and pulled her from the waist to prevent her from leaving the home. The couple struggled, Kim opened the front door, and they both fell onto the grass outside. Kim retrieved her keys and led the children to her van, where she called police. Defendant was arrested shortly thereafter.

Kim was injured during the fall. She sustained bruises on her legs and arms, including a red mark where defendant grabbed her arm. In response to the prosecutor's inquiry, Kim said she experienced pain caused by the injuries. She also volunteered that when she was walking away from the house after the incident, she "touched her nose because [she] felt that [she] had blood coming out of her nose."

Steven, who was fourteen years old when he testified, corroborated most of Kim's account. Steven said he saw his parents fall "down the steps" after defendant grabbed Kim. He recalled observing bruises on his mother's arms and legs.

3

Nixon testified that he interviewed Kim about the incident and overall home life on September 18, 2017. Nixon explained that DCPP conducted an investigation of the family to determine whether the children were safe in the home. Nixon said neither Kim nor Steven mentioned that defendant struck Kim in the facial area on the date of the altercation. If they had so stated, Nixon would have included that information in his report.

After the presentation of evidence, the municipal court reserved decision for reasons that are not relevant to this appeal. On December 5, 2018, the court issued a cogent oral decision finding defendant guilty of simple assault. In doing so, the court made detailed factual and credibility determinations.

The municipal court found Kim's testimony was "moderately believable," noting at times she "embellished her story to make herself appear more vulnerable and injured than she really was at the time of the offense." In that context, the court noted Kim's trial testimony contradicted her statement to police that defendant struck her nose, and Kim did not mention that act in her conversation with Nixon. But the court otherwise found Kim "was polite, composed and consistent with her answers." Accordingly, the court determined Kim's testimony was "credible with respect to the altercation at the door wherein the defendant was preventing her from leaving the home."

A-3875-18

Similarly, the municipal court determined Steven's "credibility was moderate," observing the "possibility" that "his mother, with whom he resides," influenced "his recollection of the events." Nonetheless, the court found "with regard to the facts supporting the simple assault charge, [Steven] was consistent and did not embellish any answers."

Finally, the municipal court determined "Nixon was very credible." Although the court found Nixon "supported the possibility" that defendant had not punched Kim's nose, the court recognized Nixon "did not undermine the State's case" regarding the interaction between the parties as Kim was attempting to leave the family home. The court noted Nixon's investigation was focused "upon determining a safe environment for the children and was not a criminal investigation."

Accordingly, the municipal court concluded defendant "knowingly or recklessly caused . . . bodily injury to [Kim] because he was holding her back from leaving the home and a reasonable person knows that if the other person resists the restraints, the parties can . . . fall[] in the struggle." According to the court, "[t]hat fall caused bruises to the victim's legs and arms and caused her pain."

A-3875-18

The municipal court's sentence included a $1000 fine, mandatory court costs and fees, and five days of community service. The court did not impose a jail term.

On de novo review, the Law Division judge also found defendant guilty of simple assault. In reaching his decision, the judge reviewed the transcript of the testimony adduced at trial, gave due deference to the municipal court's credibility determinations, and also found defendant guilty of simple assault. The Law Division judge imposed the same sentence as the municipal court, but reduced defendant's fine to $250. This appeal followed.

On appeal, defendant raises the following points for our consideration:

[POINT I]

THE MUNICIPAL COURT'S FINDING OF A VIOLATION UNDER [N.J.S.A.] 2C:12-1(a)(1) IS NOT PROVEN BEYOND A REASONABLE DOUBT BECAUSE THE VICTIM IS NOT CREDIBLE AND THE MUNICIPAL COURT'S FINDINGS OF CREDIBILITY ARE INCONSISTENT WITH THE EVIDENCE.

[POINT II]

THE STATE DID NOT MEET [ITS] OBLIGATION TO PROVIDE FAVORABLE EVIDENCE AND THEREFORE THESE CHARGES MUST BE D[I]SMISSED.

6

[POINT III]

THE MUNICIPAL COURT SHOULD HAVE
TAKEN AN ADVERSE INFERENCE AGAINST
THE STATE'S WITNESS TESTIMONY DUE TO
THEIR FAILURE TO PRODUCE PICTURES OF
THE ALLEGED INJURIES THAT WERE IN THEIR
POSSESSION.

We reject these arguments and affirm.

II.

We begin our review with well-settled principles. On appeal from a municipal court to the Law Division, the review is de novo on the record. R. 3:23-8(a)(2). The Law Division judge must make independent findings of fact and conclusions of law but defers to the municipal court's credibility findings. State v. Robertson, 228 N.J. 138, 147 (2017). This deference is especially appropriate when a municipal court's "credibility findings . . . are . . . influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999). Indeed, the municipal court has the unique opportunity to judge live testimony. State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005).

Similarly, appellate courts should defer to the municipal court's credibility findings. State v. Kuropchak, 221 N.J. 368, 382 (2015). Unlike the

7

Law Division, however, we do not independently assess the evidence. Locurto, 157 N.J. at 471. The rule of deference is more compelling where, as here, the municipal and Law Division judges made concurrent findings. Id. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result[.]" Kuropchak, 221 N.J. at 383 (quoting R. 2:10-2). "Therefore, appellate review of the factual and credibility findings of the municipal court and the Law Division 'is exceedingly narrow.'" State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470).

Pursuant to N.J.S.A. 2C:12-1(a)(1), a person is guilty of simple assault if he "attempts to cause or purposely, knowingly or recklessly causes bodily injury to another." N.J.S.A. 2C:11-1(a) defines "bodily injury" as "physical pain, illness or any impairment of physical condition."

# A.

In his first point,[2] defendant maintains his conviction must be reversed because the municipal court determined the testimony of Kim and Steven was "moderately believable." Similar to his attorney's argument before the Law Division judge, defendant claims those credibility assessments are inconsistent with the beyond a reasonable-doubt standard of proof required for criminal convictions. Defendant enumerates eight "crucial facts in evidence that go directly to the purported credibility of [Kim and Steven]."

In his consideration of the municipal court's credibility determinations, the Law Division judge addressed whether the municipal court was required to accept the "false in one, false in all" maxim in this case. Pursuant to that principle, the trier of fact is instructed:

> If you believe that any witness or party willfully or knowingly testified falsely to any material facts in the case, with intent to deceive you, you may give such weight to his or her testimony as you may deem it is entitled. You may believe some of it, or you may, in your discretion, disregard all of it.

---

[2] In his preliminary statement, defendant suggests the Law Division judge "rubberstamped" the municipal court's credibility findings, but acknowledges the judge "br[oke] away from deference" by reducing his fine from $1000 to $250. Defendant does not otherwise challenge the Law Division's de novo review of the municipal court's factual findings and conclusions of law.

[Model Jury Charges (Criminal), "False in One – False in All" (rev. Jan 14, 2013).]

The false-in-one-false-in-all principle "is simply one of many aids which the trier-of-fact may utilize to evaluate the credibility of a witness." Capell v. Capell, 358 N.J. Super. 107, 111 n.1 (App. Div. 2003). This principle "should be used only when the trier-of-fact finds that the witness intentionally testifies falsely about a material fact" and, as such, it should not be utilized "in the face of a falsehood about a non-material fact." Ibid.

In the present case, neither the Law Division judge nor the municipal court determined Kim or Steven "intentionally testified falsely about a material fact." Although both courts determined Kim embellished her testimony about the punch to her nose, that fact was immaterial to their concurrent findings that Kim was injured during her struggle with defendant, who "knowingly or recklessly" caused her bodily injury. Those findings were grounded in testimony that was credible and not embellished.

Deferring to those credibility findings, the Law Division judge concluded "the parties physically struggled and the defendant attempted to prevent the victim from leaving the home to get to her car to get to her phone, and as a result, they rolled out the door and she sustained some minimal . . .

A-3875-18

injuries." That minimal injury resulting from the struggle satisfied the definition of bodily injury under N.J.S.A. 2C:11-1(a).

In sum, the determination of defendant's guilt turned solely upon the credibility of the witnesses. The Law Division judge expressly and properly deferred to the municipal court judge's extensive and detailed credibility findings. The Law Division judge made his own determination that defendant caused Kim's injuries to her arms and legs. We are therefore convinced his credibility determinations and factual findings supported a de novo finding that defendant was guilty of simple assault beyond a reasonable doubt.

### B.

Finally, we consider defendant's overlapping contentions raised in points II and III. Renewing his counseled arguments before the Law Division, defendant maintains the State's failure to produce photographs depicting Kim's injuries on the date of the incident constituted a Brady[3] violation, and required the municipal court to draw an adverse inference from that failure. Notably, neither argument was raised before the municipal court.

Instead, defendant moved to suppress photographs of Kim's injuries, which he had requested but not received from the State. During argument before the municipal court, the prosecutor acknowledged the police reports

_____

[3] Brady v. Maryland, 373 U.S. 83 (1963).

referenced photographs, which had not been provided to defendant. The prosecutor also disclosed his attempts to obtain the photographs that day were met in vain. Accordingly, the municipal court granted the motion "should they ever reappear."

In his oral decision denying both applications, the Law Division aptly considered defendant's belated arguments in view of the governing law. Initially, the judge recognized that generally, photographs depicting "an injury, especially of a simple assault injury," which does not require "serious bodily injury but just some pain-producing injury . . . [are] not always exculpatory. Many times, they're inculpatory." Nor was an adverse inference warranted here, where Steven testified that he saw "some bruises on his mother's legs" on the day of the incident.

Under Brady, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "In order to establish a Brady violation, the defendant must show that: (1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material." State v. Martini, 160 N.J. 248, 268 (1999). Evidence is considered material if "there is

a reasonable probability that timely production of the withheld evidence would have led to a different result at trial." State v. Brown, 236 N.J. 497, 519 (2019) (internal quotation marks omitted). Materiality turns on "the importance of the [evidence] and the strength of the State's case against [the] defendant as a whole." State v. Marshall, 123 N.J. 1, 200 (1991).

In the present matter, the prosecutor candidly acknowledged the photographs mentioned in the police reports were not provided to defendant, arguably satisfying the first prong. However, as the Law Division judge recognized, photographs depicting a bodily injury – or lack of bodily injury – are not necessarily exculpatory because the prosecution need only prove the victim suffered "pain," as opposed to visible injury, under the statutory definition of bodily injury. See N.J.S.A. 2C:11-1(a). In that regard, the photographs were not material under prong three. Accordingly, there was no Brady violation here.

Nor did the State's failure to produce the photographs require the municipal court to draw an adverse inference from the absence of that evidence. As a preliminary matter, because defendant did not raise these contentions at trial, the municipal court had no opportunity to consider whether to draw an adverse inference here. Moreover, the adverse inference

charge enunciated in State v. Clawans, 38 N.J. 162 (1962), has fallen into disfavor with our Supreme Court in more recent years. See State v. Hill, 199 N.J. 545, 566 (2009). Instead, the municipal court properly granted defendant's suppression motion. We therefore discern no error in the Law Division judge's decision, rejecting defendant's Brady violation and adverse inference arguments.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14