# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-3835-21
                        A-1623-22

E.S.K.,

    Plaintiff-Respondent,

v.

M.K.,

    Defendant-Appellant.

_____

Submitted December 11, 2023 – Decided February 13, 2024

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-0480-22.

Dario, Albert, Metz, Canda, Concannon & Ortiz, attorneys for appellant (Shelley D. Albert, on the briefs).

Heymann & Fletcher, attorneys for respondent (Alix Claps, on the briefs).

PER CURIAM

These consolidated appeals involve challenges to a final restraining order (FRO), amendments to the FRO, and an award of attorney's fees. Defendant M.K. appeals from a June 30, 2022 FRO entered under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, based on predicate acts of simple assault, N.J.S.A. 2C:12-1(a), and harassment, N.J.S.A. 2C:33-4.[1] Defendant also appeals from a September 8, 2022 amended order awarding plaintiff $32,539.50 in attorney's fees and costs incurred in connection with the domestic violence matter. Finally, defendant appeals from a December 21, 2022 amendment to the FRO that clarified that plaintiff's girlfriend is a protected party under the FRO.

The trial court's findings that defendant committed assault and harassment are supported by substantial, credible evidence, and the trial court correctly applied the well-established law. The trial court's finding that plaintiff needed the restraining order to prevent further abuse is also supported by substantial, credible evidence. Therefore, we affirm the FRO.

---

[1] We use initials and titles to protect the confidentiality of the participants in these domestic violence proceedings. See R. 1:38-3(d)(10).

The trial court considered the appropriate proofs and factors in awarding attorney's fees and costs under the Act. We discern no abuse of discretion and, therefore, affirm the order awarding fees and costs.

Finally, we discern no reversible error in the trial court's decision to include plaintiff's girlfriend as a protected party. The trial court made express findings that defendant's harassment included disparaging comments about plaintiff's girlfriend, and there was sufficient evidence to include plaintiff's girlfriend as a protected party under N.J.S.A. 2C:25-29(b)(7).

## I.

We summarize the facts from the record developed during the trial, which was conducted over five non-consecutive days between December 2021 and June 2022. Both parties were represented by counsel during the proceedings. The parties were the only witnesses called to testify at trial, and they both submitted numerous exhibits into evidence.

The parties were married in 2012 and divorced approximately eight years later in 2020. They have one child together, a son born in August 2015. At the time of their divorce, the parties entered into a marital settlement agreement, under which they agreed to share joint legal and physical custody of their son.

A-3835-21

Several months after the divorce, the parties began to have disputes concerning parenting time. Defendant began to disparage plaintiff by texting him that he was "a loser" and a "big piece of shit." Those disputes escalated over time and intensified in the first half of 2021, after defendant became aware that plaintiff was dating another woman. In June and July 2021, defendant sent plaintiff a series of text messages making disparaging comments about plaintiff's girlfriend, K.W., including calling K.W. a "cockroach" and comparing her to a pig and a fish.

Things came to a head on August 15, 2021. On that date, plaintiff was with the parties' son, but defendant wanted the son to come back and spend parenting time with her. She confronted plaintiff and the son in a hallway near the rear entrance to plaintiff's apartment building. Plaintiff testified that defendant yelled at him and then repeatedly hit, punched, and kicked him. Some of that confrontation was captured by surveillance cameras in the hallway and the area outside the building's elevators. Plaintiff also recorded audio of the confrontation. Ultimately, a concierge separated plaintiff and defendant.

That same day, plaintiff sought a temporary restraining order (TRO), which was granted the following day. The TRO prohibited defendant from having any contact with plaintiff. The section prohibiting contact or

4

communication with "other[s]" included "[K.W.'s] primary residence."  The TRO also restrained defendant from going to plaintiff's home, plaintiff's place of employment, and the "primary residence" of plaintiff's girlfriend.

Over the next several months, plaintiff amended his TRO several times to include, among other things, more history of the incidents between the parties. In his amended TROs, plaintiff asserted four predicate acts of domestic violence: assault, contempt, criminal trespass, and harassment.

The trial commenced on December 14, 2021, and continued on March 22, 2022, May 2, 2022, May 25, 2022, and June 13, 2022.  One of the amendments to the TRO was made on March 4, 2022, during the trial.

As already noted, only two witnesses testified at trial:  plaintiff and defendant.  The parties also submitted over forty exhibits into evidence. Plaintiff's evidence included the audio recording of the incident on August 15, 2021, and a copy of a video taken from surveillance cameras in plaintiff's building on August 15, 2021.

After hearing the testimony of the parties and considering the evidence submitted, the trial court made its findings of fact and conclusions of law on the record on June 30, 2022.  The court found that plaintiff's testimony was credible and was corroborated by the documents and video evidence.  By contrast, the

trial court found that defendant's testimony was incredible and that much of her testimony was "not reasonable," "inconsistent," "evasive, non-responsive[,] and argumentative, at times."

The trial court then analyzed each of the four alleged predicate acts and found that credible evidence proved defendant had assaulted and harassed plaintiff. In finding a simple assault, the trial court credited plaintiff's testimony that on August 15, 2021, defendant had kicked, punched, and hit plaintiff with her fists and cell phone. The court noted that plaintiff's testimony was corroborated by both the surveillance video and a photo depicting two scratches on plaintiff's forehead. The court also pointed out that the assault took place in front of the parties' young son, who "pleaded with his mother to stop."

Concerning the alleged harassment, the trial court found that the emails and text messages sent by defendant to plaintiff were offensive, included disparaging comments and profanity, and were sent with the purpose to harass plaintiff. In making those findings, the court also found that many of defendant's comments were meant to annoy and alarm plaintiff. In addition, the court found that defendant had harassed plaintiff by "striking, kicking and shoving" him.

In finding that defendant had committed harassment, the trial court reasoned that many of defendant's alarming comments were directed at or

disparaged plaintiff's girlfriend.  In that regard, the court found that defendant's comments about and depictions of plaintiff's girlfriend were "meant to seriously annoy" plaintiff.

The trial court then found that plaintiff needed an FRO to prevent "further acts of abuse."  While the court acknowledged that defendant did not pose an immediate physical threat to plaintiff's safety, the court found that without an FRO, defendant would continue to harass plaintiff.  In making that finding, the court considered the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (6).  In particular, the trial court was concerned about the best interests of the parties' child.  Therefore, the court found "the issuance of an FRO between the parties would, in fact, be in the best interest of the victim and the child," so that the child would be protected from future traumatic incidents.

On the same day that it made its findings of fact and conclusions of law, the trial court issued an FRO against defendant.  Among other things, the FRO prohibited defendant from going to plaintiff's home or the home of his girlfriend. The FRO also prohibited defendant from having any contact or communications with plaintiff.  Addressing other protected parties, the FRO prohibited defendant from having any contact or communications with plaintiff's girlfriend by listing "[K.W.'s] primary residence."

After entering the FRO, the trial court allowed plaintiff to apply for attorney's fees and costs in accordance with N.J.S.A. 2C:25-29(b)(4). Plaintiff then filed an application, including a certification from his counsel, and defendant filed opposition. On August 19, 2022, after requesting additional financial documentation from the parties, the court granted plaintiff's application. Thereafter, it issued an amended order on September 8, 2022 awarding plaintiff $32,539.50 in fees and costs.

Defendant filed her first appeal on August 12, 2022, challenging the June 30, 2022 FRO. She, thereafter, amended her appeal to include the September 8, 2022 order granting fees and costs.

In December 2022, counsel for plaintiff wrote to the family court, asserting that defendant had physically assaulted plaintiff's girlfriend at a school event for the parties' son. Plaintiff's counsel requested the court to amend the FRO to make it clear that plaintiff's girlfriend was a protected party under the FRO. Counsel for defendant opposed that request. The trial court then issued two amended FROs on December 19, 2022, and December 21, 2022. The court clarified that the controlling order was the December 21, 2022 order. The only substantive change made in that order was in section three, where the reference to K.W.'s primary residence was replaced with K.W.'s name. In other words,

the provision in the FRO that prohibits defendant from having communications or contacts with certain people was clarified so that it covered both plaintiff and his girlfriend.

Defendant then filed a second notice, appealing from the December 21, 2022 amended FRO. Thereafter, we granted defendant's motion to consolidate the two appeals.

## II.

On these appeals, defendant challenges the FRO on several grounds. She argues that the trial court abused its discretion in (1) granting the FRO because it misapplied the analysis set forth in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006); (2) admitting the video surveillance footage without a proper foundation; and (3) admitting what are alleged to be privileged and confidential communications between the parties and their co-parenting therapist. In addition, for the first time on appeal, defendant contends that her due process rights were violated because she was not properly served with some of the amendments to the TRO. Defendant also seeks to vacate the September 8, 2022 order, arguing that the trial court erred in awarding plaintiff attorney's fees and costs. Finally, defendant challenges the December 21, 2022 amendment to the FRO, contending: (1) the amendment was entered when the

trial court did not have jurisdiction because of the pending appeal; and (2) plaintiff's girlfriend was improperly included as a protected party.

We reject these arguments because they are not supported by the record or the law. We, therefore, affirm all orders challenged in these consolidated appeals.

A.      The FRO.

Our scope of review of the grant or denial of an FRO is limited. See C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). We accord substantial deference to family judges' findings of fact because of their special expertise in family matters. N.J. Div. of Youth & Fam. Servs. v. M.C. III (In re M.C. IV & N.C.), 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). That deference is particularly strong when the evidence is largely testimonial and rests on a judge's credibility findings. Gnall v. Gnall, 222 N.J. 414, 428 (2015). We will "not disturb the factual findings and legal conclusions of the trial [court] unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Balducci v. Cige, 456 N.J. Super. 219, 233 (App. Div. 2018) (alteration in original) (quoting In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M.,

225 N.J. 487, 506 (2016)). "[W]e owe no deference to a trial court's interpretation of the law, and review issues of law de novo." Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

The Act was passed to further New Jersey's "strong policy against domestic violence." N.T.B. v. D.D.B., 442 N.J. Super. 205, 216 (App. Div. 2015) (quoting Cesare, 154 N.J. at 400). Domestic violence occurs when an adult or emancipated minor commits one or more of the predicate acts identified by the Act. N.J.S.A. 2C:25-19(a). When determining whether to grant an FRO, a trial judge must engage in a two-step analysis. Silver, 387 N.J. Super. at 125-27. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citation reformatted); see also N.J.S.A. 2C:25-29(a) (providing that an FRO may only be granted "after a finding or an admission is made that an act of domestic violence was committed"). Second, the court must determine that a restraining order is necessary to provide protection for the victim. Silver, 387 N.J. Super. at 126-27; see also J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting N.J.S.A. 2C:25-29(b) and explaining that an FRO should not be issued without a finding that relief is "necessary to prevent further abuse").

A-3835-21

The trial court found that plaintiff had proven two of the four predicate acts he alleged: simple assault and harassment. A person is guilty of a simple assault if he or she, among other things, "[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another." N.J.S.A. 2C:12-1(a)(1).

The trial court found that defendant assaulted plaintiff on August 15, 2021, when she "kicked and punched the plaintiff, chased him down the hallway, [and] continued to hit him with her fists and cell phone." In making that finding, the judge relied on plaintiff's credible testimony, the surveillance footage capturing the incident, and a photograph taken by plaintiff on the date of the incident evidencing two scratches on his forehead.

Our review of the record confirms that the judge's findings are supported by substantial, credible evidence. Moreover, the application of those factual findings to the elements of simple assault supports the judge's conclusion that defendant assaulted plaintiff. See Capell v. Capell, 358 N.J. Super. 107, 111 (App. Div. 2003); N.B. v. T.B., 297 N.J. Super. 35, 42-43 (App. Div. 1997).

The harassment statute provides that a person commits harassment:

> [I]f, with purpose to harass another, he [or she]:
>
>> a. Makes, or causes to be made, one or more communications anonymously or at

extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4(a) to (c).]

The trial court found that defendant had harassed plaintiff both before and after the TRO was entered by sending "harassing, threatening, unsolicited, and racist" communications via text, email, and the "Our Family Wizard" system. Those communications were sent over a period of several months, and the court found that they were intended to annoy and alarm plaintiff. The trial court rejected defendant's characterization of those communications as "co-parenting communications." Instead, the court found that the communications clearly fell "outside the realm of incidental parenting disputes." In addition, the court found that defendant had subjected plaintiff to "striking, kicking, and shoving," which when viewed in conjunction with the communications, constituted "a pattern of abusive and controlling behavior."

13

Like the findings concerning the simple assault, the trial court's findings concerning harassment are all supported by substantial, credible evidence. Thus, we reject defendant's arguments that the trial court did not correctly apply the first prong of the <u>Silver</u> analysis.

We also reject defendant's arguments that the trial court did not correctly apply the second prong of the <u>Silver</u> analysis. In finding that plaintiff needed an FRO, the trial court made specific findings concerning the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (6). In that regard, the trial court found that the FRO was needed to prevent further acts of domestic violence, including harassing communications. Here again, the trial court's findings are supported by substantial, credible evidence, and we discern no error in the court's application of its findings to the law.

B.    The Admission of Certain Evidence.

Defendant contends that the trial court erred in admitting the video of the incident on August 15, 2021, and an email sent by defendant to the parties' co-parenting therapist. Appellate courts review a trial court's admission of evidence for an abuse of discretion. <u>State v. Gonzalez</u>, 249 N.J. 612, 633 (2022); <u>State v. Rochat</u>, 470 N.J. Super. 392, 453 (App. Div. 2022).

At trial, plaintiff introduced an audio recording made on his cell phone on August 15, 2021, and a recording of the surveillance footage from the apartment building on the same day. Initially, defendant objected to the video, contending that it had not been properly authenticated. Thereafter, plaintiff produced a notarized certification describing how the video was recorded. Plaintiff then introduced and used the video in cross-examining defendant.

"[R]eliability is the decisive factor in determining the admissibility of a recording." State v. Brown, 463 N.J. Super. 33, 52 (App. Div. 2020) (alteration in original) (quoting State v. Nantambu, 221 N.J. 390, 395 (2015)). Testimony must "establish that the videotape is an accurate reproduction of that which it purports to represent and the reproduction is of the scene at the time the incident took place." Ibid. (quoting State v. Loftin, 287 N.J. Super. 76, 98 (App. Div. 1996)). The videographer need not testify to establish a recording's accuracy; rather, "any person with the requisite knowledge of the facts represented in the . . . videotape may authenticate it." Ibid. (quoting State v. Wilson, 135 N.J. 4, 14 (1994)).

We discern no error in the admission and use of the video. The testimony given by both parties acknowledged the incident on August 15, 2021. In addition, defendant's testimony established that the recording was an accurate

reproduction of the incident and the location within plaintiff's apartment building at which it occurred.  That testimony, together with the certification concerning how the video was copied from the surveillance system, sufficiently authenticated the video.

We also discern no abuse of discretion in the trial court's admission of the email chain that included some of defendant's communications to the therapist. The testimony at trial established that the parties worked with a therapist before August 15, 2021 to try to assist them in the parenting of their child.  Plaintiff read excerpts from one email from defendant to their therapist that summarized an interaction defendant had with the concierge at plaintiff's apartment building.

N.J.R.E. 534(b) mandates that a communication between a family therapist and the person in therapy be kept confidential.  N.J.R.E. 534(a)(3)(iii) (incorporating the definition of "marriage and family therapists" under N.J.S.A. 45:8B-6).  Confidential communications are those transmitted between a therapist and patient in the course of treatment of, or related to, that patient's condition of mental or emotional health.  N.J.R.E. 534(a)(1).  Defendant's email did not contain any confidential communications between her and the parties' co-parenting therapist.  The substance of the email did not relate to the treatment

16

of defendant's mental or emotional condition. Accordingly, we discern no violation of a privilege.

C.    The Amendments to the TRO and Defendant's Due Process Rights.

For the first time on this appeal, defendant argues that her due process rights were violated because she was not given proper notice of certain amendments to the TRO. In that regard, defendant argues that she was unable to properly defend against certain of these allegations because she was not served with the amendments to the TRO and could not access them via e-Courts.

Parties to a domestic violence action are entitled to certain procedural due process rights. J.D., 207 N.J. at 478. Our Supreme Court has explained that "ordinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing that are imposed by the statute." Ibid. (citations omitted). Therefore, the Court has explained that "ensuring that defendants are not deprived of their due process rights [in a domestic violence matter] requires our trial courts to recognize both what those rights are and how they can be protected consistent with the protective goals of the Act." Id. at 479.

Defendant did not raise a due process argument at trial. Accordingly, we review this issue for plain error to determine whether the amendments to the

TRO were "clearly capable of producing an unjust result." See R.G. v. R.G., 449 N.J. Super. 208, 220 (App. Div. 2017) (quoting State v. Green, 447 N.J. Super 317, 325 (App. Div. 2016)).

Defendant contends that she and her counsel were never provided the amendments allegedly raising new allegations. The record, however, establishes that by the time of trial, both defendant and her counsel had received the amended TROs and had the opportunity to prepare for and address the issues and claims raised in the amendments. In short, we discern no due process violation and no plain error.

D.      The Fees Award.

Victims of domestic violence are entitled to reasonable attorney's fees as compensatory damages when the fees are the direct result of the act of domestic violence. N.J.S.A. 2C:25-29(b)(4). "An award of counsel fees in a domestic violence proceeding requires no special showing, as an award of counsel fees is a form of 'monetary compensation'" under N.J.S.A. 2C:25-29(b)(4). N.G. v. J.P., 426 N.J. Super. 398, 422 (App. Div. 2012) (citing McGowan v. O'Rourke, 391 N.J. Super. 502, 507 (App. Div. 2007)). When issuing a fee award, the trial court must apply the factors set forth in Rule 4:42-9(b) and RPC 1.5(a). Ibid.

Rule 4:42-9(b) requires counsel for the party seeking the award to submit an affidavit of services addressing the factors enumerated in RPC 1.5(a).

We review a trial court's award of counsel fees for an abuse of discretion. N.G., 426 N.J. Super. at 422. If a defendant fails to supply information regarding his or her financial circumstances, the trial court has discretion to award fees without considering defendant's ability to pay the fees. Ibid.

The trial court properly considered the factors set forth in RPC 1.5(a) and found that the fees incurred by plaintiff were a direct result of defendant's acts of domestic violence. The court also reviewed plaintiff's counsel's affidavit of services and found that the time spent was reasonable, the hourly rates charged were fair, and the fees incurred related to the domestic violence matter. In making the award, the court limited the fees to those incurred between the entry of the TRO and the entry of the FRO, including amendments.

We discern no abuse of discretion in the trial court's award of fees. We also reject defendant's contention that the court failed to consider her Case Information Statement (CIS). The trial court had directed the parties to submit updated CISs. Defendant failed to comply with that directive. Ultimately, the trial court considered defendant's certification but did not find that it warranted a change in the fee award.

19

E.    The December 21, 2022 Amendment to the FRO.

Finally, defendant challenges the December 21, 2022 amendment to the FRO. She contends that that amendment was made when jurisdiction was with this court, and that plaintiff's girlfriend is not a proper protected party.

When the FRO was originally entered on June 30, 2022, it made reference to plaintiff's girlfriend in the section related to other protected parties. In that regard, it referred to plaintiff's girlfriend's primary residence. Considered in context, the reference was clearly to plaintiff's girlfriend. The court clarified that point in amending the FRO on December 21, 2022. Although defendant had already filed a notice of appeal, we discern no error because the family court had a right to clarify what it intended when it entered the FRO. See R. 1:13-1 (explaining that clerical mistakes in orders "arising from oversight and omission may at any time be corrected by the court on its own initiative . . . notwithstanding the pendency of an appeal"); McNair v. McNair, 332 N.J. Super. 195, 199 (App. Div. 2000) (holding that a trial court was not without jurisdiction because of the pendency of an appeal to correct an "obvious or acknowledged error in the order under appeal").

We also reject defendant's argument that plaintiff's girlfriend was not a proper protected party under the Act. N.J.S.A. 2C:25-29(b)(7) authorizes a

family judge to issue an order forbidding a defendant from making contact with the plaintiff or "others."  "Others" is expressly defined to include those "with whom communication would be likely to cause annoyance or alarm to the victim." Ibid.  Here, the trial court found defendant's disparaging text messages about plaintiff's girlfriend were likely to cause plaintiff annoyance and alarm. Defendant's history of harassment, which the court found escalated after plaintiff began dating his new girlfriend, contributed to the need for an FRO to prevent further acts of abuse.  Based on those findings, we discern no reversible error in the trial court's decision to extend protection to plaintiff's girlfriend.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3835-21