**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2524-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ZACHARY T. MAI, a/k/a
ZACHARY MAI,

    Defendant-Appellant.

_____

Submitted November 6, 2024 – Decided February 3, 2025

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 21-02-0271.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Thomas M. Caroccia, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Zachary T. Mai was found guilty by a jury of first-degree attempted murder and related assault and weapons offenses arising from his near fatal stabbing of Diep Huynh, a family friend, who was collecting a $5,500 gambling debt from defendant. Defendant was sentenced to an aggregate fifteen-year prison term with an eighty-five percent parole-ineligibility period (twelve years and nine months) per the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant appeals arguing:

POINT I

The Trial Court Erred In Denying Defendant's Motion For Acquittal Of The Attempted Purposeful Murder Charge.

POINT II

The Trial Court[] Erred By Admitting As Intrinsic Evidence, Without Notice And A Hearing Under Rule Of Evidence 404(B), Testimony And Proofs About Defendant's Gambling.

POINT III

The Trial Court Erred In Denying A "False In One, False In All" Charge.

POINT IV

Defendant's Sentence Is Improper And Excessive.

A-2524-22

Having reviewed the record in light of the parties' arguments and governing legal principles, we affirm defendant's convictions and sentence.

I.

Defendant was charged with: first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1) and 2C:11-3A(1); second-degree aggravated assault, attempting to cause serious bodily injury, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault, N.J.S.A. 2C:12-l(b)(2); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). His jury trial lasted five days. We limit our discussion to the trial evidence and the trial judge's rulings that are pertinent to this appeal.

A.

On December 4, 2019, between 8:00 p.m. and 9:00 p.m., defendant went to Huynh's Pennsauken home to pay a $5,520 football gambling debt. According to Huynh, the "middle guy" who collects money for a bookie, defendant would usually meet him in Huynh's driveway—where a home security camera was located—to pay off defendant's gambling debts. Defendant would sit "inside" his car and hand Huynh an envelope with money through the passenger side window. That football season, Huynh claimed defendant lost bets between

$12,000-$14,000, including the money defendant was supposed to pay that night.

Huynh testified the arrangement for getting defendant's money that evening was "very different" because defendant called from a different number, parked down the street, and was standing "behind" his "half open[ed]" passenger door. Huynh explained defendant had "both hand[s] hidden behind the door" and handed him an envelope, which he thought contained the amount owed because of its "thickness." It was later discovered that only fifty-seven one-dollar bills were in the envelope.

After some idle conversation, Huynh turned around to walk home where he would usually count the money. Huynh testified he then "suddenly . . . felt [defendant] lunge into [his] back, with [defendant's] left hand holding [him] . . . and with [defendant's] right hand cutting [his] neck." Huynh said he fell to his knees due to the force and defendant began screaming "something like . . . [']kill you, kill you[']" while "chopping" away at Huynh with "[h]is right hand" and seemingly "aiming for [Huynh's] heart." After slitting his throat, defendant stabbed Huynh "at least six or seven" times in his hands while he tried to protect his torso from being cut.

Defendant fled in his car as Huynh "struggled" home, calling out to his daughter Cindy for help. Because of his close family relationship with defendant's family (defendant's father is his friend, he has known defendant for about fifteen years and is the godfather of defendant's younger brother), Huynh said he did not tell Cindy that defendant stabbed him. Cindy called 911 and followed the dispatcher's instructions to apply pressure on her father's wounds until an ambulance arrived.

Pennsauken Patrol Officer Megan Watts arrived at Huynh's home and saw him "[lying] on his back, bleeding profusely." Huynh had "large lacerations to his torso," cuts on his hands, and a "jagged[,] large, [and] very deep laceration" on his neck that was "pouring" blood. Huynh was rushed to Cooper Medical Center. Trauma surgeon Dr. Kyle Remick testified Huynh underwent emergency "life-saving" surgery on the anterior jugular vein in his neck.

Meanwhile, defendant drove to a local pizzeria in neighboring Cherry Hill and phoned the police to report the incident. Cherry Hill Patrolman Gregory Brisbin arrived at the pizzeria. His encounter with defendant was recorded on his body-worn camera footage and played to the jury. Brisban testified defendant explained he had just come from Huynh's house to collect his sports bet winnings from Huynh. Defendant said Huynh was "a bookie" he has known

for a few years, and Huynh owed him "[a]bout $5,000." He said that he and Huynh got into an argument, and Huynh wielded a knife at him, which he managed to block.

Defendant was then taken to the Pennsauken police station, where he gave a statement to Camden County Prosecutor's Office Detective Kyrus Ingalls after being Mirandized[1]. Defendant reiterated that it was Huynh who owed him money. He asserted Huynh had a "bad" and "high temper," and that Huynh "started yelling" at him before Huynh pulled a knife from his pocket. Defendant initially stated that when Huynh pulled out the knife, he "was able to grab [Huynh's] hand, turn the knife around to [Huynh], . . . and jab [Huynh] two or three times" before tossing the knife in the grass. After it was pointed out to defendant that he was uninjured, defendant equivocated on whether he stabbed Huynh while Huynh was holding the knife or whether he "held" the knife himself before stabbing Huynh. Defendant, who was almost forty-years old, also explained that because he was "bigger" and "stronger" than Huynh, who was sixty-three years old, he was able to overpower him.

---

[1] See Miranda v. Arizona, 384 U.S. 436 (1966).

Detective Ingalls testified that after executing a communications data warrant to get data from defendant's cellphone carrier, the data revealed that defendant deleted seven hundred and fifty-four text messages between him and Huynh. The texts discussed defendant's bets and, on several occasions, how much he owed for losing. The detective explained the last text message on defendant's phone was from the day before the stabbing at approximately 6:42 p.m. In the message, Huynh told defendant that defendant owed about $5,500-$5,520 that week and advised him "if [he] miscounted, just let [him] know."

Defense counsel, outside the presence of the jury, took issue with the State's use of screenshots from defendant's phone, claiming their agreement was for the State to only admit screenshots of the messages from Huynh's phone that were attached to its motion. Counsel argued the admission of defendant's text threads would change the jury's perspective of the conversation because it would view the exchange from defendant's perspective instead of Huynh's. The State retorted the message threads were "essentially" "a mirror image" of one another, and the parties agreed to admit all the messages on the thread within a specified time frame, not just a singular message. The State further argued that when it entered defendant's phone into evidence, which defense counsel had since the beginning of the case, there was no objection.

7

The judge found:

> [Rule] 803[(b)(1)][2] specifically states in a criminal case the admissibility of [a] defendant's statement as offered against defendant is subject to . . . [Rule] 104[(c)].[3] We basically sort of had that argument now. [Rule] 104[(c)] basically [provides] . . . that certainly if . . . the [c]ourt subsequently determines from all the evidence that the statement is not admissible, the [c]ourt [may] take appropriate action.
>
> So we're going to proceed with the trial in that particular matter. [Defense counsel,] [y]our objection [is] overruled. Certainly[,] you can renew it at the end of the case . . . but we're going to keep moving.
>
> . . . .
>
> [I]f you can [later] with . . . specificity tell me the undue prejudice to you I'll reconsider your argument. At this time, it's overruled.

---

[2]  Rule 803(b)(1) governs the admissibility of a "[s]tatement by [a] [p]arty-[o]pponent." It provides: "The statement is offered against a party-opponent and is . . . the party-opponent's own statement, made either in an individual or in a representative capacity" regardless of declarant's unavailability. N.J.R.E. 803(b)(1).

[3]  Rule 104(c)(1) requires preliminary hearings concerning the admissibility of a defendant's statement in criminal cases to be conducted outside "the presence of the jury." The "burden of persuasion" is on the State. N.J.R.E. 104(c)(2). Should a court admit the statement "the jury shall not be informed of the finding that the statement is admissible but shall be instructed to disregard the statement if it finds that it is not credible." Ibid. Furthermore, "[i]f the court subsequently determines from all of the evidence that the statement is not admissible, the court shall take appropriate action." Ibid.

Evidence of defendant's gambling habits—introduced through recorded statements to law enforcement and screenshots of text messages[4] between defendant and Huynh from November 1, 2019 to December 4, 2019—was permitted based on the pretrial ruling. The judge, with the parties' consent, granted the State's pretrial motion to treat evidence of defendant's gambling history as intrinsic evidence under N.J.R.E. 404(b).

At the close of the State's case, defense counsel moved under Rule 3:18-1 for acquittal of all charges. Counsel asserted the State had not "met [its] burden" due to a lack of evidence and Huynh's inconsistencies on the stand, but did not specify what they were. He did, however, assert "[t]here was no weapon recovered which is certainly important for the weapons charges." He further maintained defendant "was very consistent in his statement [to police] . . . [when it] was played to the jury[,] which clearly demonstrated that he [neither had a] . . . weapon," nor did he "have it for an unlawful purpose[,] . . . because [his] purpose was [to defend] himself." The trial judge denied the motion, finding the State presented sufficient evidence to sustain the charges.

Defendant exercised his right not to testify. In addition, he did not present any witnesses.

---

[4] The screenshots are not included in the record.

At the jury charge conference, defendant requested the "false in one, false in all" jury charge. Defendant asserted Huynh's testimony included three discrepancies regarding the order of events in comparison to his statement to the prosecutor's office. The judge found Huynh's inconsistencies did not warrant the charge.

Defendant argued Huynh's use of the word and demonstration of a "push" during his testimony differed from his statement that defendant "lunge[d]" at him. The judge reasoned that Huynh's saying "push or lunge" did not amount to a misstatement. Furthermore, the judge did not "recollect" any misstatement as to "[w]here he was struck first after his throat."

Defendant contended Huynh testified that Detective Ingalls asked where defendant stabbed him first, but Huynh told the detectives he did not remember. The judge maintained he did not "recollect" any misstatement as to "where [Huynh] was struck first after his throat."

Finally, defendant pointed out Huynh was confused on cross-examination if he saw defendant's father on the night of the stabbing. The judge noted that Huynh testified through a "Vietnamese interpreter[,] . . . [and acknowledged] there was a little confusion with [the interpreter,] but not a lot. . . . And . . . things were pretty clear." The judge's observations of Huynh's testimony gave

him the impression that "he was best trying to tell the truth." The judge also recognized defendant and Huynh had a "[quasi-]famil[al] relationship," which made him reluctant to identify defendant as his attacker.

In sum, the judge determined he would not read the "false in one, false in all" charge because defendant did not show "in any way, shape or form that there was any knowingly false testimony . . . to a material fact with the intent to deceive." Thus, defendant's request was denied "without prejudice."

In his jury charges, the judge issued the following limiting instructions regarding consideration of the gambling evidence:

> The State has introduced evidence that the defendant has engaged in gambling. Normally, such evidence is not permitted under our Rules of Evidence. Our rules specifically exclude evidence that a defendant has committed other acts when it is offered only to show that he has a disposition or a tendency to do wrong and therefore must be guilty of the charged offenses. Before you can give any weight to this evidence, you must be satisfied that the defendant committed the other act. If you are not satisfied, you may not consider it for any purpose.
>
> However, our rules do permit evidence of other acts when the evidence is used for certain specific narrow purposes. In this case, the gambling was introduced to show as to why the defendant allegedly committed the offenses.
>
> Whether this evidence does in fact demonstrate motive is for you to decide. You may decide that the evidence

11

does not demonstrate motive and is not helpful to you at all. In that case, you must disregard the evidence. On the other hand, you may decide that the evidence does demonstrate motive and use it for that specific purpose. However, you may not use this evidence to decide that defendant has a tendency to commit crimes or that he's a bad person; that is you may not decide that, just because . . . defendant has committed other crimes, wrongs, or act[s], he must be guilty of the present crimes.

I have admitted the evidence only to help you decide the specific question of motive. You may not consider it for any other purpose and may not find the defendant guilty now simply because the State has offered evidence that he committed other crimes, wrongs, or acts.

After deliberating for approximately two hours, the jury found defendant guilty of all charges. Defendant was later sentenced to an aggregate term of fifteen years in prison subject to NERA.

II.

We first address defendant's contention in Point II that the trial judge erred in admitting evidence of his gambling history as intrinsic evidence without notice and a Rule 404(b) hearing. Citing State v. Rose, defendant argues his statements about gambling are not intrinsic evidence because the evidence neither "directly proves" the charged offenses nor evidenced "an uncharged act" that "facilitate[d] the commission of" nor was "performed contemporaneously

with the charged crime[s]"—attempted murder, assault, or weapons crimes.  206 N.J. 141, 180 (2011) (internal citation omitted).  He contends the evidence led the jury to convict him "simply because the jury believes . . . he is a bad person," and an illegal gambler.  By not holding a Rule 404(b) hearing, defendant claims the judge did not apply the Cofield[5] four-prong test regarding the admission of other crimes or wrongs.  Defendant contends the result of admitting evidence of his gambling as intrinsic evidence was "clearly capable of producing an unjust result."  R. 2:10-2.

A judge's decision to admit or exclude evidence is "entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment."  Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).  Before a court determines whether a prior bad act is admissible for a particular purpose, it should first decide whether the evidence relates to a prior bad act or whether it is intrinsic to the charged offense.  State v. Brockington, 439 N.J. Super. 311, 325 (App. Div. 2015) (quoting Rose, 206 N.J. at 179).  Evidence that is intrinsic to a crime, while needing to satisfy the relevancy and undue prejudice requirements under N.J.R.E. 403, is not subject to Rule 404(b) since the wrong

---

[5]  State v. Cofield, 127 N.J. 328, 338 (1992).

is "performed contemporaneously with the charged crime" and "facilitate[s] the commission of the charged crime." Id. at 328 (quoting Rose, 206 N.J. at 180). The temporal proximity between the uncharged bad act and the indicted crime must be contemporaneous, not simply "close in time[,]" and the link between the same must be "meaningful." Id. at 338, 339 n.2 (Fisher, J., concurring in part, dissenting in part) (citations omitted).

Under N.J.R.E. 403, evidence that is relevant may be inadmissible if the risk of prejudice substantially outweighs its probative value. Relevant evidence is any evidence that has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." State v. Darby, 174 N.J. 509, 519 (2002) (quoting N.J.R.E. 401). In determining relevance, "the inquiry should focus on 'the logical connection between the proffered evidence and a fact in issue.'" Ibid. (quoting State v. Hutchins, 241 N.J. Super. 353, 358 (App. Div. 1990)). The required logical connection has been satisfied "if the evidence makes a desired inference more probable than it would be if the evidence were not admitted." State v. Garrison, 228 N.J. 182, 195 (2017) (quoting State v. Williams, 190 N.J. 114, 123 (2007)).

We agree with the trial judge that evidence of defendant's gambling— Huynh's testimony regarding defendant's weekly football bets and Ingall's

testimony of the screenshots of Huynh's and defendant's text messages—was intrinsic because it was "inextricably intertwined" with the State's theory that defendant stabbed Huynh to avoid paying the $5,500 gambling debt. Defendant's gambling history with Huynh directly relates to the State's theory that it was defendant's intent to murder Huynh because he could not pay the amount of money Huynh was collecting. See Rose, 206 N.J. at 180. Indeed, defendant's gambling was done contemporaneously with the murder—that is, his gambling facilitated the commission of the attempted murder.

In addition, the gambling evidence was relevant and probative to the charges against defendant especially in light of the State's burden to show defendant's self-defense theory was inconsistent with the facts. See Rose, 206 N.J. at 165 (quoting State v. Long, 173 N.J. 138, 164-65 (2002)) ("[a] wide range of motive evidence is generally permitted, and even where prejudicial, its admission has been allowed in recognition that it may have 'extremely high probative value'"). Moreover, the absence of any "other less prejudicial evidence" to establish his motive for killing Huynh—a longtime family friend and gambling middleman—"enhances the probative value of the [gambling] evidence because it is 'necessary to prove the State's theory.'" Long, 173 N.J. at 164-65 (quoting State v. Erazo, 126 N.J. 112, 131 (1991)) (holding evidence of

the defendant's motive "should not be excluded under [Rule] 403" because "the fact that there is no other less prejudicial evidence available to establish [the] defendant's motive" enhanced its probative value since it was "necessary to prove the State's theory."). There was no less prejudicial evidence available to establish defendant's motive for attempting to kill Huynh, thus its extremely high probative value substantially outweighs any prejudicial effect. Additionally, as noted, the court charged the jury regarding its consideration of the evidence, which also served to minimize any prejudicial effect it could have on defendant.

## III.

In Point I, defendant contends his conviction for attempted murder should be vacated because the trial judge erred in denying his motion for acquittal of the charge following the close of the State's case. Defendant contends there was no showing of "a criminal purpose and a substantial step toward the commission of [attempted murder]." See State v. Perez, 177 N.J. 540, 553 (2003). He stresses the State's evidence merely showed that it was his "conscious object[tive]" to cause Huynh pain and to "stop [Huynh] from taking [defendant's] money." He points to Dr. Remick's testimony that besides the cut

on Huynh's neck, most of Huynh's stab wounds were "[s]uperficial," "less than a centimeter deep" into his skin, and not "life-threatening injuries."

Rule 3:18-1 provides that a defendant may, at the close of evidence, move for the entry of a judgment of acquittal on the grounds that "the evidence is insufficient to warrant a conviction." When considering a Rule 3:18-1 motion,

> the trial judge must determine . . . whether, viewing the State's evidence in its entirety, . . . and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 458-59 (1967).]

Such inferences of guilt may be based on circumstantial evidence. State v. Franklin, 52 N.J. 386, 406 (1968) (citing State v. Fiorello, 36 N.J. 80, 86 (1961)).

We apply the same test as the trial court in reviewing the sufficiency of evidence. State v. Kittrell, 145 N.J. 112, 130 (1996). "In deciding whether the trial court was correct in denying [a Reyes] motion, we . . . take into account only the evidence on the State's case, unaided by what defendant later developed at trial." State v. Lemken, 136 N.J. Super. 310, 314 (App. Div. 1974).

Turning to the offense in question, N.J.S.A. 2C:11-3(a)(1)-(2) defines murder as "when . . . [t]he actor purposely causes death or serious bodily injury

17

resulting in death; or [t]he actor knowingly causes death or serious bodily injury resulting in death." And N.J.S.A. 2C:5-1(a)(1)-(3) states that

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
>
> (1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;
>
> (2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part; or
>
> (3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

Giving the State the benefit of all reasonable inferences from its evidence, a reasonable jury could have found that defendant's attack against Huynh constituted attempted murder. The State's evidence was that defendant: circled Huynh's neighborhood; diverged from his and Huynh's usual meet-up location and custom (sitting inside the car, handing the envelope through the window) to pay his gambling debts; had a conspicuous demeanor during his meeting with Huynh; repeatedly stabbed Huynh with a knife, saying "kill you, kill you"; and cut Huynh's neck from behind, causing a "life-threatening" injury. Thus, the

State's proofs of defendant's acts and words together established sufficient evidence that he tried to murder Huynh rather than defend himself. See State v. Jones, 242 N.J. 156, 169 (2020) (alteration in original) (quoting Perez, 177 N.J. at 544) ("And the conduct is not considered in isolation; rather, 'we consider [a] defendant's words and acts in tandem as part of the whole picture from which the jury could have drawn its inferences.'"). The trial judge properly denied defendant's acquittal motion.

IV.

Defendant contends in Point III that he is entitled to a new trial as the trial judge's error in denying his request for a "false in one, false in all" charge is plain error under Rule 2:10-2 because it prejudiced him. He argues the charge was necessary because "[t]here was sufficient certainty that [Huynh] . . . willfully or knowingly misrepresented the facts," see State v. Young, 448 N.J. Super. 206, 228 (App. Div. 2017), and he attempted to mislead the jury "in some material respect," State v. Fleckenstein, 60 N.J. Super. 399, 408 (App. Div. 1960) (citation omitted).

The "false in one, false in all" model jury charge instructs the jury that if they believe any witness:

> willfully or knowingly testified falsely to any material facts in the case, with intent to deceive [them], [the

jury] may give such weight to his or her testimony as [they] may deem it is entitled. [They] may believe some of it, or [they] may, in [their] discretion, disregard all of it.

[Model Jury Charges (Criminal), "False in One-False in All" (rev. Jan. 14, 2013).]

The charge rests in the trial judge's sound discretion. See State v. Ernst, 32 N.J. 567, 583-84 (1990). It, "like other inferences, is permissive and not mandatory. Thus, a trier of fact who finds an inaccuracy in a witness's testimony may, but need not, entertain the inference." State v. Segars, 172 N.J. 481, 499-500 (2002) (Long, J., dissenting) (citing Fleckenstein, 60 N.J. Super. at 408). If a court does not issue the charge, the jury may "bring[] to bear the ordinary rules for judging credibility and may accept none, some, or all of a witness's evidence." Ibid.

We conclude the trial judge was correct in denying defendant's request for the "false in one, false in all" charge. It must first be stressed that, before us, defendant does not specify what in Huynh's testimony was willfully or knowingly a misrepresentation of the facts. In reviewing the trial judge's reasoning for rejecting defendant's charge request, we see no indication he abused his discretion. The judge had the opportunity to observe Huynh's demeanor when he testified through an interpreter and was satisfied his

testimony was not materially false from the statement he gave to law enforcement. Defendant fails to show how the judge's reasoning was off base. Under the circumstances, the standard jury instruction on weighing the credibility of witnesses given by the judge was sufficient. The record reveals no indication that defendant was prejudiced by the lack of a "false in one, false in all" charge.

V.

Finally, we turn to defendant's challenge to his aggregate fifteen-year sentence subject to NERA in Point IV. He contends his sentence is improper and excessive and he should have been sentenced to the minimum ten-year prison term for a first-degree offense.

The judge applied aggravating factors: one, "[t]he nature and circumstances of the offense[s] . . . including whether or not it was committed in an especially heinous, cruel, or depraved manner"; two, "[t]he gravity and seriousness of harm inflicted on the victim"; three, "[t]he risk that the defendant will commit another offense"; and nine,"[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(1), (2), (3), and (9). As to mitigating factors, the judge only applied seven, "no history of prior delinquency or criminal activity." N.J.S.A. 2C:44-1(b)(7). He rejected

defendant's request to apply mitigating factors: four, "[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"; eight, "defendant's conduct was the result of circumstances unlikely to recur"; and twelve, "willingness of the defendant to cooperate with law enforcement authorities." N.J.S.A. 2C:44-1(b)(4), (8), and (12). The judge found the aggravating factors "clearly, convincingly, and substantially outweigh[ed] the mitigating factors."

Our review of a criminal sentence is limited to deciding "whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). Thus, a criminal sentence must be affirmed unless "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). If a sentencing court properly identifies and balances the factors and their existence is supported by sufficient credible evidence in the record, this court will affirm the sentence. See State v. Carey, 168 N.J. 413, 426-27 (2001); see also State v. Megargel, 143 N.J. 484, 493-94 (1996).

22

We affirm substantially for the reasons expressed by the judge at sentencing. The judge addressed defendant's sentencing arguments, and the record supports his decision not to apply mitigating factors four, eight, and twelve. In sum, the sentence does not shock our judicial conscience.

To the extent we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION